# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ Beaver _____ County

| For Prothonotary Use Only: | *TIME STAMP* |
|---|---|
| Docket No: **10702-2020** | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Transfer from Another Jurisdiction
- [ ] Petition
- [ ] Declaration of Taking

**Lead Plaintiff's Name:**
Enterprise Bank

**Lead Defendant's Name:**
The Ingros Family, LLC

**Are money damages requested?** [ ] Yes [x] No

**Dollar Amount Requested:** (check one)
- [ ] within arbitration limits
- [ ] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes [x] No

**Is this an *MDJ Appeal*?** [ ] Yes [x] No

Name of Plaintiff/Appellant's Attorney: William L. Stang, Esquire; Lauren P. McKenna, Esquire

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other

- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [x] Zoning Board
- [ ] Other: _____

*FILED OR ISSUED*
*MICHAEL ROSSI*
*PROTHONOTARY*
*BEAVER COUNTY, PA*
*20 JUL 21 PM 12: 33*

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [x] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

# EXHIBIT B

## FORM OF COVER SHEET FOR COMPLAINT

Court of Common Pleas of Beaver County
Civil Division
# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | *10702- 2020* |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Enterprise Bank | The Ingros Family, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 4091 Mount Royal Boulevard Allison Park, PA  15101 | 295 Third Street Beaver, PA  15009 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | Ryan D. Sharbonno |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | 114 West Shaffer Drive Aliquippa, PA  15001 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

*[Stamp: FILED OR ISSUED 2020 JUL 21 PM 12:33 MICHAEL ROSSI PROTHONOTARY BEAVER COUNTY, PA]*

| TOTAL NO. OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | ☒ Complaint ☐ Notice of Appeal<br>☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | CASE TYPE | | |
|---|---|---|---|
| ☐ $25,000 or Less | ☐ Motor Vehicle | ☐ Mortgage Foreclosure | ☐ Partition |
| | ☐ Medical Malpractice | ☐ Ejectment | ☒ Declaratory Judgment |
| ☒ Over $25,000 | ☐ Other Professional Liability | ☐ Statutory Appeals | ☐ Replevin |
| | ☐ Product Liability | ☐ Quiet Title | ☐ Asbestos |
| | ☐ Other _____ | | ☐ Domestic Relations |
| | | | ☐ Divorce |
| | | | ☐ Custody |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: (or Pro Se Litigant)

Papers may be served at the address set forth below

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY (OR PRO SE LITIGANT) | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| William L. Stang, Lauren McKenna | 500 Grant Street, Suite 2500 Pittsburgh, PA  15219 |

| PHONE NUMBER | FAX NUMBER | EMAIL ADDRESS |
|---|---|---|
| 412-391-1334 | 412-391-6984 | wstang@foxrothschild.com |

| SIGNATURE | SUPREME COURT IDENTIFICATION NO. | DATE |
|---|---|---|
| *William L. Stang* | 33221, 59145 | July 21, 2020 |

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

       Plaintiff,

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

       Defendants.

CIVIL DIVISION

NO. *10702- 2020*

**COMPLAINT**

Filed on behalf of Plaintiff,
Enterprise Bank

Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA 15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com

FILED OR ISSUED
2020 JUL 21 PM 12: 35
MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

       Plaintiff,                                   NO. *10702 - 2020*

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

       Defendants.

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
THE BEAVER COUNTY BAR ASSOCIATION
788 Turnpike Street
Beaver, PA 15009
(724) 728-4888

AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estat demandas expuestas las páginas siguientes, usted tiene viente (20 dias de plazo al partir de la fecha de la demanda y la notificatión.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su personá.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puese perder dinero o sus propiedades u ostros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEPHONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Servicio De Referencia E Información Legal
BEAVER COUNTY BAR ASSOCIATION
788 Turnpike Street
Beaver, PA 15009
(724) 728-4888

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

       Plaintiff,                               NO.  *10702-2020*

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

       Defendants.

## COMPLAINT

Plaintiff, Enterprise Bank, by and through its attorneys, Fox Rothschild LLP, hereby brings this Complaint against defendants, The Ingros Family, LLC a/k/a Ingros Family, LLC and Ryan D. Sharbonno (jointly, "defendants"), and in support hereof avers as follows:

### Parties

1.      Plaintiff, Enterprise Bank ("Enterprise") is a Pennsylvania state chartered banking institution maintaining a business address at 4091 Mount Royal Boulevard, Allison Park, PA 15101.

2.      Defendant, The Ingros Family, LLC a/k/a Ingros Family, LLC ("The Ingros Family, LLC") is a Pennsylvania limited liability corporation maintaining a business address at 295 Third Street, Beaver, PA 15009.

3.      Defendant, Ryan D. Sharbonno ("Sharbonno") is an adult individual maintaining an address at 114 West Shaffer Drive, Aliquippa, PA 15001.

### Jurisdiction and Venue

4.      Jurisdiction and venue are proper in the Court of Common Pleas of Beaver County as this matter relates to real property located in Beaver County, Pennsylvania.

## Factual Background

5.     By deed dated January 22, 2014, The Ingros Family LLC acquired the property

known as 295 Third Street, Beaver, PA ("Premises") (also identified elsewhere as 260 Wilson

Avenue, Beaver, PA), from George J. and Sheila C. Campbell, which deed was recorded on

February 3, 2014 with the Recorder of Deeds of Beaver County ("Recorder of Deeds") at

instrument number 3465071.   A true and correct copy of the Deed is attached hereto as Exhibit

"A".

6.     On October 27, 2014, The Ingros Family LLC made an open-end construction

mortgage to First National Bank of Pennsylvania in the amount of $2,680,000 (First National

Bank Mortgage"), which mortgage was recorded on October 30, 2014 with the Recorder of

Deeds at instrument number 3491334.   A true and correct copy of the First National Bank

Mortgage is attached hereto as Exhibit "B".

## The Enterprise Refinance Transaction

7.     In or about September 2018, the same borrower, The Ingros Family LLC, applied

to Enterprise to refinance the First National Bank Mortgage.

8.     Enterprise was willing to provide a refinance loan to The Ingros Family LLC

provided that the repayment of the loan was secured by a first mortgage lien on the Premises.

9.     On September 14, 2018, Enterprise loaned the sum of $3,179,000 to The Ingros

Family LLC.  A true and correct copy of the Note evidencing the loan is attached hereto as

Exhibit "C".

10.     To secure repayment of the loan, on September 14, 2018, The Ingros Family

executed a mortgage in favor of Enterprise in the sum of $3,179,000 ("Enterprise Mortgage"),

which mortgage was recorded on September 19, 2018 with the Recorder of Deeds at instrument

2

number 3579294.  A true and correct copy of the Enterprise Mortgage is attached hereto as Exhibit "D".

11.     However, unlike the First National Bank Mortgage, the Enterprise Mortgage identified the borrower as Ingros Family LLC (without the "The" before the family name on the mortgage).

12.     The Recorder of Deed's receipt specifically identifies the mortgagor as Ingros Family LLC (without the "The" before the family name), consistent with the identification of the borrower in the body of the Enterprise Mortgage ("Receipt").  A true and correct copy of the Receipt is attached hereto as Exhibit "E".  At this time, it is not clear how the Enterprise Mortgage was indexed by the Recorder.  Specifically, it is unclear whether the mortgage was indexed in the name index under "T" (The Ingros Family LLC) or "I" (Ingros Family LLC).

13.     The refinance proceeds provided by Enterprise were used to satisfy the First National Bank Mortgage, resulting in a payoff of the First National Bank Mortgage in the amount of $2,642,766.33.  A true and correct copy of the HUD-1 settlement statement from the refinance closing showing the payoff of the prior mortgage is attached as Exhibit "F".

14.     It was the intention of Enterprise and The Ingros Family LLC that the Enterprise Mortgage would constitute a valid, first lien on the Premises.

15.     It was also the intention of Enterprise and The Ingros Family LLC that the borrower would be properly identified in the Enterprise Mortgage in order to constitute a valid, first lien on the Premises, and that any discrepancy in the identification of the borrower without the "The" in the name of the borrower would have no impact on the validity or priority of the Enterprise Mortgage.

3

### The Post Closing Judgment Issues

16.     Following the Enterprise refinance transaction, Enterprise learned of the existence of a prior judgment on the Premises entered in favor of Sharbonno in the amount of $60,000 and recorded on May 3, 2018 ("First Sharbonno Judgment").   A true and correct copy of a judgment search reflecting the judgment is attached hereto as Exhibit "G".

17.     Further, Enterprise learned that Sharbonno also obtained a second judgment by confession in the amount of $460,000 in the matter of *Sharbonno v. The Ingros Family LLC*; CCP Beaver; Civil Action No. 2018-33331 ("Second Sharbonno Judgment") on November 20, 2018, after the recording of the Enterprise Mortgage.  The judgment search on the Premises shows that the judgment was indexed against "The Ingros Family LLC" and Jeffrey Ingros. See Exhibit "G".

18.     A Writ of Execution was issued in connection with the Second Sharbonno Judgment on or about March 5, 2020 and a Sheriff's Sale, which was originally scheduled for May 2020, is now scheduled for August 10, 2020.

### The Potential Issue Created by the Inconsistent Reference to the Borrower's Name

19.     Because of the discrepancy in the manner in which the borrower's name is identified in the Enterprise Mortgage and the later entered Second Sharbonno Judgment, a question has arisen as to whether the Enterprise Mortgage will be deemed to have priority over the later entered Second Sharbonno Judgment.

20.     For the reasons averred herein, the Enterprise Mortgage should be deemed to have priority over the Sharbonno Judgment.

4

**The Potential Issue Created by the Existence of the First Sharbonno Judgment**

21.　For the reasons averred herein, the Enterprise Mortgage should also be deemed to have priority over the First Sharbonno Judgment, which although entered prior to the Enterprise Mortgage, should be deemed subordinate based upon the doctrine of equitable subrogation.

## COUNT I – DECLARATORY JUDGMENT

22.　Enterprise incorporates each of the foregoing paragraphs as if fully set forth herein.

23.　An actual controversy exists regarding the priority of the Enterprise Mortgage on the Premises.

24.　Enterprise seeks a declaration that the Enterprise Mortgage is a valid lien on the Premises, regardless of the manner in which the borrower may have been identified in the mortgage and whether the mortgage may have been mis-indexed based on the identification of the borrower.

25.　Enterprise seeks a further declaration that the Enterprise Mortgage is a valid first lien on the Premises, which is senior to and has priority over any other interests in the Premises, including the lien of the First Sharbonno Judgment and the Second Sharbonno Judgment.

WHEREFORE, Plaintiff, Enterprise Mortgage, respectfully requests the Court to:

a　　Enter judgment in its favor and against Defendants;

b　　Declare that the Enterprise Mortgage is a valid lien on the Premises which has first priority on the Premises and the claimed interests (if any) of all Defendants are subsequent, subordinate and subject to the Enterprise Mortgage;

c　　Grant such other relief as the Court deems appropriate.

5

## COUNT II – REFORMATION

26.     Enterprise incorporates each of the foregoing paragraphs as if fully set forth herein.

27.     The Enterprise Mortgage did not include reference to the borrower's name as **The** Ingros Family, LLC by accident or mistake.

28.     All parties were aware that the document was to include the correct and proper name of the borrower.

29.     As a result, to the extent that a determination is made that the identification of the borrower in the mortgage without reference to the full name of the borrower impacts the validity and/or lien of the Enterprise Mortgage, the mortgage should be reformed based on the mutual mistake of the parties.

30.     Alternatively, the mortgage should be reformed based on unilateral mistake on the part of Enterprise in identifying the borrower.

WHEREFORE, plaintiff, Enterprise Mortgage respectfully requests that this Court reform the Enterprise Mortgage to reference the name of the borrower as **The** Ingros Family, LLC and grant such other and further relief as may be just and proper.

## COUNT III – EQUITABLE LIEN

31.     Enterprise incorporates each of the foregoing paragraphs as if fully set forth herein.

32.     The proceeds of the Enterprise loan were used to pay off the lien of the First National Bank Mortgage.

33.     To the extent that any challenge is raised to the validity of the Enterprise Mortgage, Enterprise is still entitled to a lien on the Premises.

6

34.    Accordingly, Enterprise pleads in the alternative that as a result of the satisfaction of the First National Bank Mortgage, Enterprise is entitled to an equitable mortgage on the Premises in a first lien position as a result of the prior mortgage that was satisfied through the proceeds of the refinance loan.

WHEREFORE, Enterprise Bank respectfully requests that this Court declare that Enterprise Bank is entitled to an equitable mortgage lien on the Premises, that the lien is a first lien on the Premises and grant such other and further relief as may be just and proper.

## COUNT IV – EQUITABLE SUBROGATION

35.    Enterprise incorporates each of the foregoing paragraphs as if fully set forth herein.

36.    At the time of the Enterprise loan, the Premises were encumbered by the First National Bank Mortgage, which was then a first mortgage lien on the Premises.

37.    Enterprise required that the First National Bank Mortgage be released from the Premises so that it would obtain a first mortgage lien on the Premises.

38.    The loan made by Enterprise was used to pay off the First National Bank Mortgage, resulting in the release of the mortgage from the Premises.

39.    The judgment identified as the First Sharbonno Judgment, should be treated as subordinate to the lien of the Enterprise Mortgage based on Enterprise's pay off of the First National Bank Mortgage, which had priority over this later entered judgment.

40.    Under the doctrine of equitable subrogation, Enterprise stands in the shoes of the First National Bank Mortgage and therefore has priority over the First Sharbonno Judgment and the Second Sharbonno Judgment, for the reasons averred herein.

WHEREFORE, Enterprise respectfully requests that this Court declare the liens of the, the First Sharbonno Judgment and the Second Sharbonno Judgment are subordinate to the lien of the

7

Enterprise Mortgage, that the Enterprise Mortgage constitutes a first lien on the Premises and grant

such other and further relief as may be just and proper.

LAUREN P. MCKENNA, ESQUIRE
WILLIAM L. STANG, ESQUIRE
FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
(412) 391-1334

Attorneys for Plaintiff,
ENTERPRISE BANK

8

File No. 13-498

# This Indenture

Made the 22nd day of January, 2014,

Between



3465071
4 Pages
02/03/2014 12:15:21 PM
Beaver County
DEED          $55.00

GEORGE J. CAMPBELL and SHEILA C. CAMPBELL, his wife

(hereinafter called the Grantors)

*AND*

THE INGROS FAMILY LLC

(hereinafter called the Grantee)

Witnesseth, That the said Grantors in consideration of Four Hundred Twenty-Five Thousand And 00/100 Dollars ($425,000.00) paid to the Grantors by the Grantee, receipt of which is hereby acknowledged, do grant, bargain, sell and convey to the said Grantee, their assigns, the survivor of them and the survivor's personal representatives and assigns,

ALL that certain lot or piece of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the General Plan of Outlots for said Borough, bounded and described as follows, to wit:

BEGINNING at a point on the South side of Third Street, said point being located a distance of 130 feet East of the East line of Wilson Avenue (as measured along said South side of Third Street); thence extending eastwardly along the South side of said Third Street, a distance of 65 feet to a post; thence southwardly by line of land now or formerly of J.R. Leonard, a distance of 160 feet to a post; thence westwardly along the line of land of Emma C.D. Campbell (formerly of J.B. Wilson) a distance of 65 feet to a post; thence northwardly by line of land of Emma C.D. Campbell (formerly of J.B. Wilson) 160 feet to a point at the place of beginning.

BEING designated as Parcel No. 14-001-0216.000

Parcel One: ALL that certain piece, parcel or lot of land lying and being situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Out Lot No. 13 in the General Plan of Out Lots for the said Borough of Beaver, bounded and described as follows, to wit:

BEGINNING at a point on the North side of Center Alley 120 feet East of Wilson Avenue; thence northwardly and parallel with Wilson Avenue and along the line of lands formerly of Emma C.D. Campbell and lands now or formerly of Flora D. Kerr, 90 feet to lands now or formerly of John B. Wilson; thence eastwardly and parallel with Center Alley and Third Street along the line of lands now or formerly of said John B. Wilson, 75 feet to the line of lands now or formerly of J.R. Leonard; thence southwardly and parallel with Wilson Avenue and along the line of lands now or formerly of J.R. Leonard, 90 feet to Center Alley; thence westwardly and parallel and along Center Alley, 75 feet to the place of beginning. Having a frontage of 75 feet on Center Alley, and extending back therefrom of equal width, 90 feet to lands now or formerly of John B. Wilson aforesaid.

Parcel Two:  ALL that certain parcel or lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Out Lot No. 13 in the General Plan of Outlots of the Borough of Beaver, bounded and described as follows, to wit:

ON the North by Third Street; on the East by lot formerly owned by Laura Smith; on the South by land formerly owned by George H. Campbell, and land formerly owned by

T85246-00 COAL

**EXHIBIT**
**A**

File No. 13-498

Ebert Long; and on the West by Wilson Avenue, the said lot being situate at the Southeast corner of Third Street and Wilson Avenue, and having a frontage of One hundred thirty (130) feet, more or less, on Third Street and extending back therefrom of equal width along Wilson Avenue, one hundred sixty (160) feet, more or less, to land formerly owned by George H. Campbell and land formerly owned by Ebert Long.

Parcel Three: ALL that certain piece, parcel or lot of land situate in the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING on the North by the land formerly of George H. Campbell; on the East by the land formerly of George H. Campbell on the South by Center Alley, and on the West by Wilson Avenue. Said lot having a frontage of four (4) feet on Wilson Avenue and extending back therefrom One hundred twenty (120) feet to the land formerly of George H. Campbell.

BEING designated as Parcel Nos. 14-001-0217.000 and 14-001-0220.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at a point on the eastern line of Wilson Avenue, which point is 45 feet northwardly from the intersection of the eastern line of Wilson Avenue with the northern line of Center Alley; thence northwardly by the eastern line of Wilson Avenue, 45 feet to a stake; thence eastwardly by a line parallel with the northern line of Center Alley and 90 feet distant therefrom 120 feet to a stake; thence by a line parallel with the eastern line of Wilson Avenue, southwardly 45 feet to a stake; thence by a line parallel to the northern line of Center Alley and 45 feet distant therefrom, 120 feet in a westerly direction to the place of beginning.

BEING designated as Parcel No. 14-001-0218.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the General Plan, bounded and described as follows, to wit:

ON the North by land now or formerly of J.B. Wilson; on the East by land now or formerly of George H. Campbell; on the South by Center Alley; and on the West by Wilson Avenue. Said lot having a frontage of 41 feet on Wilson Avenue and extending back therefrom 120 feet to land now or formerly of George H. Campbell.

BEING designated as Parcel No. 14-001-0219.000

Under and subject to easements, rights of way, oil and gas leases, restrictions, reservations, exceptions, agreements and coal and mining rights as set forth in prior instruments of record.

As to Parcel No. 14-001-0216.000: BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife by deed of William G. Fedyski, single dated October 29, 1992 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on October 29, 1992, in Deed Book 1510, page 750.

As to Parcel Nos. 14-001-0217.000 and 14-001-0220.000: BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated August 31, 1992 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on September 1, 1992 in Deed Book Volume 1500, Page 707.

As to Parcel No. 14-001-0218.000: BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife, by deed of George J. Campbell, married, and Mary S. Campbell, unmarried, siblings, dated September 15, 1988 and recorded in the

TSS240-00 COAL

File No. 13-498

Recorder's Office of Beaver County, Pennsylvania, on September 16, 1988 in Deed Book Volume 1349, Page 504.

As to Parcel No. 14-001-0219.000; BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife, by deed of The M. Louise Koehler Trust, dated November 24, 1993 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on December 2, 1993 in Deed Book Volume 1556, Page 555.

with the appurtenances:     To have and to hold     the same to and for the use of the said Grantees, as tenants by the entirety, their assigns and unto the survivor of them, and the survivor's personal representatives and assigns; and the Grantors, for their heirs, executors, administrators and assigns, hereby covenant and agree that they will

Warrant and Defend Generally

the property hereby conveyed against any and all persons lawfully claiming the same.

NOTICE—THIS DOCUMENT DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGES MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P. L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.)

In Witness Whereof, The said Grantors have hereunto set their hands and seals. Dated the day and year first above written.

Sealed and Delivered
IN THE PRESENCE OF US:

_____                        _____(SEAL)
Witness                                           George J. Campbell

_____                        _____(SEAL)
Witness                                           Sheila C. Campbell

State of _____ARIZONA_____        :
County of _____MARICOPA_____     : ss

On this the     22  day of  JAN. , 2014, before me, a Notary Public for the above jurisdiction, residing in therein, the undersigned Officer, personally appeared George J. Campbell and Sheila C. Campbell, known to me (satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires  12-30-2014

VICKY L. FORBES
Notary Public - Arizona
Maricopa County
My Comm. Expires Dec 30, 2014

788240-08 COAL

File No. 13-498

**NOTICE** THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, IS FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966, AS AMENDED 1980, OCT. 10, P.L. 874, NO. 156 § 1.

Attest:                                            THE INGROS FAMILY LLC

_____                           By: _____
                Secretary                                            President

## CERTIFICATE OF RESIDENCE

I do hereby certify that the <u>Tax Billing Address</u>     I do hereby certify that the <u>Owner Mailing</u>
of the within named grantee/s is                            <u>Address</u> of the within named grantee/s is

<u>The Ingros Family LLC</u>                               <u>The Ingros Family LLC</u>
Name or Mortgagee Company                                  Name

_____                                   _____
In Care of (if required)                                   In Care of (if required)

<u>170 Beaver Street</u>                                   <u>170 Beaver Street</u>
Address                                                    Address

<u>Beaver, PA 15009</u>                                    <u>Beaver, PA 15009</u>
City, State and Zip Code                                   City, State and Zip Code

Witness my hand this 31st day of January, 2014

_____
                                            For Grantee

Mail to:
American General Services Corp.
701 Corporation Street, 2nd Floor
Beaver, PA 15009



I hereby CERTIFY that this
document is recorded in the
Recorder's      Office      of
Beaver County, Pennsylvania

James Jacklin Bell

This Document Recorded          Instr # 3485371
02/03/2014          State RTT $4250.00      Receipt # 2014808166
12 10 21 PM         Local RTT $4250.00      Rec Fee $36.00
Instrument: DEED                   Beaver County, Recorder of Deeds

T8S240-00 COAL

*13*

**Parcel Identification
Number:**
14-001-0216.000,
14-001-0217.000,
14-001-0218.000,
14-001-0219.000,14-001-
0220.000

**RECORDATION
REQUESTED BY:**
First National Bank of
Pennsylvania
BBU Pittsburgh
ONE FNB BLVD
HERMITAGE, PA  16148

**WHEN RECORDED MAIL
TO:**
First National Bank of
Pennsylvania
Technology Center/Loan
Operations
4140  East State Street
Hermitage, PA  16148

**SEND TAX NOTICES TO:**
The Ingros Family LLC
278 East End Avenue
Beaver, PA  15009

**FOR RECORDER'S USE ONLY**

## OPEN - END CONSTRUCTION MORTGAGE AND SECURITY AGREEMENT

*(This instrument is an open-end mortgage and secures future advances pursuant to 42 Pa. C.S.
§§ 8143 and 8144, Act No. 126 of 1990)*

**MAXIMUM LIEN.** This Mortgage shall secure unpaid loan advances made after this Mortgage is
recorded. The unpaid principal balance of advances exclusive of interest and other extensions of
credit secured by the Mortgage made for the payment of taxes, assessments, maintenance
charges, insurance premiums and costs incurred for the protection of the mortgaged premises
shall not exceed at any one time **$2,680,000.00.**

**Amount Secured Hereby:**    $2,680,000.00

**THIS MORTGAGE** dated October 27, 2014, is made and executed between The Ingros Family
LLC, whose address is 278 East End Avenue, Beaver, PA  15009; a Pennsylvania Limited
Liability Company (referred to below as "Grantor") and First National Bank of Pennsylvania,
whose address is ONE FNB BLVD, HERMITAGE, PA  16148 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers,
releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described
real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all
streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements,
hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and
remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with
ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without
limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Beaver
County, Commonwealth of Pennsylvania:

See Attached Exhibit "A", which is attached to this Mortgage and made a part of this
Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 295 3rd Street, Beaver, PA  15009.
The Real Property parcel identification number is 14-001-0216.000, 14-001-0217.000,

**EXHIBIT**
**B**



AMERICAN GENERAL SERVIAGS

**3491334**
13 Pages
10/30/2014 02:14:17 PM
Beaver County
MORT        $85.00

*KH*

# MORTGAGE
## (Continued)

**14-001-0218.000, 14-001-0219.000,14-001-0220.000.**

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $2,680,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF BORROWER'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN BORROWER AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower and Grantor shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**CONSTRUCTION MORTGAGE.** This Mortgage is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the Commonwealth of Pennsylvania.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the

# MORTGAGE
## (Continued)

Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**CONSTRUCTION LOAN.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage,

## MORTGAGE
### (Continued)

except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but

**MORTGAGE**
**(Continued)**                                                                    Page 5

═══════════════════════════════════════════════════════════════════════════════

not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage,

# MORTGAGE
## (Continued)

this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any

### MORTGAGE
(Continued)

Page 7

of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and, with or without taking possession of the Property, to collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

# MORGAGE
## (Continued)

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default; and the Grantor consents to such appointment. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Possession of the Property.** For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any

# MORTGAGE
## (Continued)

anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADVANCE MONEY MORTGAGE.** (A) This Mortgage secures future advances made pursuant to the Note or Related Documents. Without limiting the foregoing, this Mortgage secures all advances made by Lender or Banks of any kind or nature described in 42 Pa. C.S.A. § 8144. (B) If Grantor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to or for the benefit of Grantor, such a notice shall be ineffective as to any future advances made: (1) to enable completion of the improvements on the Real Property for which the loan secured hereby was originally made; (2) to pay taxes, assessments, maintenance charges and insurance premiums; (3) for costs incurred for the protection of the Property or the lien of this Mortgage; (4) on account of expenses incurred by Lender by reason of a default of Borrower or Grantor hereunder or under the Related Documents or under the Note; and (5) on account of any other costs incurred by Lender to protect and preserve the Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Grantor shall be secured by the lien of this Mortgage on the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Beaver County, Commonwealth of Pennsylvania.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

## MORGAGE
### (Continued)

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successor Interests.** The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means The Ingros Family LLC; The Fort McIntosh Group, LLC; and Jeffrey S. Ingros and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means The Ingros Family LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means and includes any and all of Grantor's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, future advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Grantor, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Grantor may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the indebtedness may be or may become barred or unenforceable against Grantor for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires or otherwise..

**MORGAGE**
**(Continued)**                                                           Page 11

---

**Lender.** The word "Lender" means First National Bank of Pennsylvania, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated October 27, 2014, **in the original principal amount of $2,680,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

THE INGROS FAMILY LLC

By: _____  MEMBER _____ (Seal)
   Jeffrey S. Ingros, Member of The Ingros Family LLC

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

---

**CERTIFICATE OF RESIDENCE**

I hereby certify, that the precise address of the mortgagee, First National Bank of Pennsylvania, herein is as follows:

BBU Pittsburgh, ONE FNB BLVD, HERMITAGE, PA  16148

_____
   Attorney  or  Agent  for Mortgagee

## MORTGAGE
### (Continued)

Page 12

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA )

) SS

COUNTY OF BEAVER )

On this, the 6TH day of October, 20 14, before me _____, the undersigned Notary Public, personally appeared Jeffrey S. Ingros, Member of The Ingros Family LLC, who acknowledged himself or herself to be the member or designated agent of The Ingros Family LLC, a Limited Liability Company, and that he or she as such a member or designated agent, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the Limited Liability Company by himself or herself as a member or designated agent.

In witness whereof, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
John R. Fencil, Notary Public
Beaver Boro, Beaver County
My Commission Expires March 23, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Notary Public in and for the State of ___ PA ___

LASER PRO Lending, Ver. 14.1.0.009 Copr. Harland Financial Solutions, Inc. 1997, 2014.    All Rights Reserved.    - PA
L:\CFI\WIN95\CFI\LPL\G03.FC  TR-5671727  PR-STRDPRT1

## Exhibit A

ALL that certain lot or piece of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being known as Lot No. C-1, Consolidated Lot No. 1 in The Ingros Family, LLC Lot Consolidation Plan No. 1 as set forth in Plan Book Volume 37, Page 70. And also being set forth in the Site Development Plan on land owned by The Ingros Family, LLC as set forth in Plan Book Volume 37, Page 99.

BEING designated as Parcel No. 14-001-0216.000, 14-001-0217.000, 14-001-0220.000, 14-001-0218.000 and 14-001-0219.000

BEING the same premises conveyed to The Ingros Family LLC by deed of George J. Campbell and Sheila C. Campbell, his wife dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on February 3, 2014, as Instrument No. 3465071.



I hereby CERTIFY that this document is recorded in the Recorder's Office of Beaver County, Pennsylvania

Janice Jacoby Bull

This Document Recorded
10/30/2014
02:14:17 PM
Instrument: MORT

Instr #: 3491334
Receipt #: 2014838713
Rec Fee: $85.00
Beaver County, Recorder of Deeds

*0955*03020284*%464432003%09142018*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,179,000.00 | 09-14-2018 | 09-14-2043 | 3020284 | RCC1EB | | MDL | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** Ingros Family, LLC
295 Third Street
Beaver, PA 15009

**Lender:** ENTERPRISE BANK
MASON D. LOCKARD
4091 Mt. Royal Boulevard
Allison Park, PA 15101

---

**Principal Amount: $3,179,000.00**        **Date of Note: September 14, 2018**

Maturity Date: September 14, 2043

**PROMISE TO PAY.** Ingros Family, LLC ("Borrower") promises to pay to ENTERPRISE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million One Hundred Seventy-nine Thousand & 00/100 Dollars ($3,179,000.00), together with interest on the unpaid principal balance from September 14, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.250% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

Beginning with the payment due on October 14th, 2018, Borrower will pay 300 monthly payments of principal and interest in the amount of $21,149.12, plus escrow in the amount of $4,250.00. Borrowers final payment will be due on September 14, 2043 and will be for all principal and all accrued interest not yet paid.. .

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST RATE RIDER.** See Interest Rate Rider for additional rate reprical terms and conditions.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ENTERPRISE BANK, MASON D. LOCKARD, 4091 Mt. Royal Boulevard, Allison Park, PA 15101.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000 percentage points. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note.

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness

tablers

EXHIBIT

# PROMISSORY NOTE
## (Continued)

Loan No: 3020284

Page 2

evidenced by this Note

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Change of Ownership.** The resignation or expulsion of any member with an ownership interest of twenty percent (20%) or more in Borrower.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued interest immediately due and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else, including internal legal counsel, to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings including efforts to modify or vacate any automatic stay or injunction, and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. All such attorneys' fees and expenses will become part of the amounts due and owing under this Note and, at Lender's option will (A) become payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the remaining term of the Note or (2) be treated as a balloon payment which will be due and payable at the Note's maturity. The attorneys' fees and expenses shall bear interest at the Note rate from the date of expenditure until paid.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here ___)

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**PROPERTY INSURANCE.** Borrower understands that Borrower is required to obtain insurance for the collateral securing this Note. Further information concerning this requirement is set forth in the Assignment of Life Insurance and Mortgage and in the Agreement to Provide Insurance, all the terms and conditions of which are hereby incorporated and made a part of this Note

**COMPENSATING BALANCES.** Borrower shall establish and maintain at Enterprise Bank all of Borrower's rental and operating deposit accounts.

**PREPAYMENT PENALTY.** A prepayment penalty in the amount of 5% of the original principal balance will be assessed through the first re pricer unless property is sold to an independent third party. Principal prepayments of up to 20% per year will be permitted without penalty.

**DEBT SERVICE COVERAGE RATIO.** Borrowers to maintain a rental debt service coverage ratio of not less than 1.2x on an annual basis beginning with year end 2019.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: ENTERPRISE BANK 4091 MT. ROYAL BOULEVARD ALLISON PARK, PA 15101.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN

**PROMISSORY NOTE**
(Continued)

Loan No: 3020284                                                                     Page 3

FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

INGROS FAMILY, LLC

By: _____ (Seal)
      Jeffrey S. Ingros, Member of Ingros Family, LLC

By: _____ (Seal)
      Anne H. Ingros, Member of Ingros Family, LLC

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

**LENDER:**

ENTERPRISE BANK

X _____
   Authorized Signer

Borrower Name: Ingros Family, LLC   Account Number: 3020284

## PROMISSORY NOTE

## INTEREST RATE RIDER

DATE: 09/14/2018

This Interest Rate Rider is executed in connection with, and is hereby made a part of that certain Promissory Note ("Note") executed by the undersigned Borrower, to Enterprise Bank, of even date herewith, in the principal amount of $3,179,000.

Notwithstanding the language in the "Payment" paragraph in said Note, the undersigned Borrower hereby agrees that the said Note shall be amended as follows:

1) Interest Rate and Monthly payment changes.

    (a)    Change Dates

The interest rate to be paid hereunder will change on the first day following the due date of the sixtieth (60th) monthly payment "First Change Date" and the one hundred twentieth (120th) monthly payment "Second Change Date" and the one hundred eightieth (180th) monthly payment "Third Change Date" and the two hundred fortieth (240th) monthly payment "fourth change date" under said Note.

    (b)    The Index

Beginning with the First Change Date, the new interest rate will be based upon an index. The "Index" is the Treasury Rate, as said index is quoted in the Wall Street Journal, with a maturity date of 08/30/2028. Index reference date will be based upon the Treasury Rate in effect on the fifteenth (15th) day prior to the First Change Date.

Beginning with the Second Change Date, the new interest rate will be based upon an index. The "Index" is the Treasury Rate, as said index is quoted the Wall Street Journal, with a maturity date of 08/30/2033. Index reference date will be based upon the Treasury Rate in effect on the fifteenth (15th) day prior to the Second Change Date.

Beginning with the Third Change Date, the new interest rate will be based upon an index. The "Index" is the Treasury Rate, as said index is quoted the Wall Street Journal, with a maturity date of 08/30/2038. Index reference date will be based upon the Treasury Rate in effect on the fifteenth (15th) day prior to the Third Change Date.

Borrower Name: Ingros Family, LLC    Account Number: 3020284

Beginning with the Fourth Change Date, the new interest rate will be based upon an index. The "Index" is the Treasury Rate, as said index is quoted the Wall Street Journal, with a maturity date of 08/30/2043. Index reference date will be based upon the Treasury Rate in effect on the fifteenth (15th) day prior to the Fourth Change Date.

If the index is no longer available, Enterprise Bank will choose a new index based upon comparable information.

   (c)    Calculation of Changes

On the Change Date, Enterprise Bank will calculate the new interest rate by adding three and a half percent (3.50%) per annum to the index. Enterprise Bank must adjust the payment amount in conjunction with the change period to amortize the principal over the remaining term of the note.

Notwithstanding anything to the contrary in this Interest Rate Rider, the interest rate shall not be adjusted on a Change Date to an interest rate lower than 6.25% per annum ("Floor Interest rate"). On the Change Date, the interest rate shall be adjusted to the higher of the Floor Interest Rate or the interest rate calculated in accordance with the formula set forth above. Said interest rate shall be in effect until the next scheduled Change Date.

Witness the Hand(s)

Ingros Family, LLC

By: _____
Jeffrey S. Ingros, Member of Ingros Family, LLC

By: _____
Anne H. Ingros, Member of Ingros Family, LLC



**JANICE JESCHKE BEALL**
BEAVER COUNTY RECORDER OF DEEDS
810 Third Street, Beaver, PA 15009
Phone (724) 770-4560



## RECORDING COVER/CERTIFICATION PAGE

| Recording: | |
|---|---|
| Cover Page | 2.00 |
| Recording Fee | 13.00 |
| Writ Tax | 0.50 |
| Affordable Housing | 13.00 |
| Record Improvement Fund | 5.00 |
| Additional Pages | 16.00 |
| Other Fees | 2.00 |
| Justice Fund | 40.25 |
| Reference Fee | 2.00 |
| Demolition Fund | 15.00 |

INSTRUMENT #:  3579294

Receipt#: 2018967027
Clerk:   MAP
Rec Date: 09/19/2018 08:35:56 AM
Doc Grp: RP
Descrip: MORTGAGE
Num Pgs: 13
Rec'd Frm: LAMPL SETTLEMENT SERVICES/MAIL

Party1:  INGROS FAMILY LLC
Party2:  ENTERPRISE BANK

Total:                          108.75
**** NOTICE: THIS IS NOT A BILL ****

Record and Return To:

LAMPL SETTLEMENT SERVICES/MAIL
435 S MAPLE AVE
GREENSBURG PA 15601

I hereby CERTIFY that this document is recorded in the
Recorder of Deeds Office of Beaver County, Pennsylvania



*Janice Jeschke Beall*

Janice Jeschke Beall
Recorder of Deeds

## PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover page sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION



**EXHIBIT**
D

**Parcel Identification Number:**
14-001-0216.000, 14-001-0217.000,
14-001-0218.000, 14-001-0219.000,
14-001-0220.00

**RECORDATION REQUESTED BY:**
ENTERPRISE BANK, MASON D. LOCKARD,
4091 Mt. Royal Boulevard, Allison Park, PA
15101

**WHEN RECORDED MAIL TO:**
ENTERPRISE BANK, MASON D. LOCKARD,
4091 Mt. Royal Boulevard, Allison Park, PA
15101

**SEND TAX NOTICES TO:**
ENTERPRISE BANK, MASON D. LOCKARD,
4091 Mt. Royal Boulevard, Allison Park, PA
15101

FOR RECORDER'S USE ONLY



*0745%03020284%#########%09142018*

## OPEN - END MORTGAGE AND SECURITY AGREEMENT

*(This instrument is an open-end mortgage and secures future advances pursuant to 42 Pa. C.S.*
*§§ 8143 and 8144, Act No. 126 of 1990)*

**MAXIMUM LIEN.** This Mortgage shall secure unpaid loan advances made after this Mortgage is
recorded. The unpaid principal balance of advances exclusive of interest and other extensions of
credit secured by the Mortgage made for the payment of taxes, assessments, maintenance
charges, insurance premiums and costs incurred for the protection of the mortgaged premises
shall not exceed at any one time $3,179,000.00.

**Amount Secured Hereby:**    $3,179,000.00

**THIS MORTGAGE** dated September 14, 2018, is made and executed between Ingros Family,
LLC, whose address is 295 Third Street, Beaver, PA 15009 (referred to below as "Grantor")
and ENTERPRISE BANK, whose address is 4091 Mt. Royal Boulevard, Allison Park, PA 15101
(referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers,
releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described
real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all
streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements,
hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and
remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with
ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without
limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Beaver
County, Commonwealth of Pennsylvania:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if
fully set forth herein.



# MORTGAGE
## (Continued)

Loan No: 3020284                                                            Page 2

The Real Property or its address is commonly known as 295 Third Street, Beaver, PA 15009.
The Real Property parcel identification number is 14-001-0216.000, 14-001-0217.000,
14-001-0218.000, 14-001-0219.000, 14-001-0220.00.

CROSS-COLLATERALIZATION. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus
interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or
any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the
Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute
or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether
obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or
hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or
hereafter may become otherwise unenforceable. (Initial Here ☐☐☐☐☐☐ )

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the
Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security
interest in the Personal Property and Rents.

FUTURE ADVANCES. In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor
whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage
secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to
Grantor, together with all interest thereon.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND
PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF
ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $3,179,000.00, THE
RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING
TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all
amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this
Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the
Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and
control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs,
replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of
Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal,
release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;
(2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and
acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use,
generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance
on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or
threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously
disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other
authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous
Substance on, under, about or from the Property and (b) any such activity shall be conducted in compliance with
all applicable federal, state, and local laws, regulations and ordinances, including without limitation all
Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such
inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the
Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's
purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or
to any other person. The representations and warranties contained herein are based on Grantor's due diligence in
investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims
against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under
any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses,
liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from
a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage,
disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether
or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage,
including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction
and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in

# MORTGAGE
## (Continued)

Loan No: 3020284                                                                Page 3

---

the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and if Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees [whether incurred by Lender's internal counsel or Lender's outside counsel] at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitations, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law, or other charges that could

# MORTGAGE
## (Continued)

Loan No: 3020284                                                                                                    Page 4

accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under the Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under the Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment

# MORTGAGE
## (Continued)

Loan No: 3020284                                                    Page 5

payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This Instrument shall constitute a Security Agreement to the extent any of the Property

# MORTGAGE
## (Continued)

Loan No: 3020284                                                                Page 6

---

constitutes fixtures; and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)  Grantor's obligations under the Note, this Mortgage, and the Related Documents, and  (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any

**MORTGAGE**
**(Continued)**

Loan No: 3020284                                                                    Page 7

member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, Issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's Indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default; and the Grantor consents to such appointment. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**MORTGAGE**
(Continued)

Loan No: 3020284                                                              Page 8

Possession of the Property. For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

Nonjudicial Sale. If permitted by applicable law, Lender may foreclose Grantor's Interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

Deficiency Judgment. Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Notice of Sale. Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees (whether incurred by Lender's internal counsel or Lender's outside counsel) at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitations, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

NOTICES. Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is

**MORTGAGE**
**(Continued)**

Loan No: 3020284                                                                                                      Page 9

deemed to be notice given to all Grantors.

ADVANCE MONEY MORTGAGE. (A) This Mortgage secures future advances made pursuant to the Note or Related Documents. Without limiting the foregoing, this Mortgage secures all advances made by Lender or Banks of any kind or nature described in 42 Pa. C.S.A. § 8144. (B) If Grantor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to or for the benefit of Grantor, such a notice shall be ineffective as to any future advances made: (1) to enable completion of the improvements on the Real Property for which the loan secured hereby was originally made; (2) to pay taxes, assessments, maintenance charges and insurance premiums; (3) for costs incurred for the protection of the Property or the lien of this Mortgage; (4) on account of expenses incurred by Lender by reason of a default of Grantor hereunder or under the Related Documents or under the Note; and (5) on account of any other costs incurred by Lender to protect and preserve the Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Grantor shall be secured by the lien of this Mortgage on the Property.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Mortgage:

Amendments. This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

Merger. There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Successor Interests. The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

Time is of the Essence. Time is of the essence in the performance of this Mortgage.

Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here [illegible] )

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means Ingros Family, LLC and includes all co-signers and co-makers signing the

## MORTGAGE
### (Continued)

Loan No: 3020284                                                                      Page 10

Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L., No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Ingros Family, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. The liens and security interests created pursuant to this Mortgage covering the Indebtedness which may be created in the future shall relate back to the date of this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means ENTERPRISE BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated September 14, 2018, in the original principal amount of $3,179,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is September 14, 2043.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and

## MORTGAGE
### (Continued)

Loan No: 3020284                                                          Page 11

other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

INGROS FAMILY, LLC

By:_____(Seal)
   Jeffrey S. Ingros, Member of Ingros Family, LLC

By:_____(Seal)
   Anne H. Ingros, Member of Ingros Family, LLC

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, ENTERPRISE BANK, herein is as follows:

MASON D. LOCKARD, 4091 Mt. Royal Boulevard, Allison Park, PA  1510

_____
Attorney   or Agent   for Mortgagee

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA          )
                                      ) SS
COUNTY OF Allegheny                   )

On this, the ___ day of September, 20 1__, before me Elsie R. Lampl, the undersigned Notary Public, personally appeared Jeffrey S. Ingros, Member of Ingros Family, LLC and Anne H. Ingros, Member of Ingros Family, LLC, who acknowledged themselves to be the members or designated agents of Ingros Family, LLC, a Limited Liability Company, and that they as such members or designated agents, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the Limited Liability Company by themselves as members or designated agents.

In witness whereof, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Elsie R. Lampl, Notary Public
City of Greensburg, Westmoreland County
My Commission Expires Jan. 24, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Notary Public in and for the State of PA

---

LaserPro, Ver. 17.2.0.019  Copr. D+H USA Corporation 1997, 2018.  All Rights Reserved.  - PA  C:\CFI\LPL\G03.FC
TR-3746  PR-NODEMAND

Exhibit A

The land referred to in this policy is described as follows:

Tax ID / Parcel No.   14-001-0220-000

ALL that certain lot or piece of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being known as Lot No. C-1, Consolidated Lot No. 1 in The Ingros Family LLC Lot Consolidation Plan No. 1 as set forth in Plan Book Volume 37, Page 70 and being set forth in the Site Development Plan on land owned by the Ingro Family, LLC as set forth in Plan Book Volume 37, Page 69.

BEING designated as Parcel No. 14-001-0216.000, 14-001-0217.000, 14-001-0218.000, 14-001-0219.000, 14-001-0220.00



FINANCIAL DIMENSIONS
— INC —
APPRAISAL TITLE SETTLEMENT
SINCE 1907

| | |
|---|---|
| **FDI #:** | 1254734-1 |
| **REPORT DATE:** | 04/29/2019 |
| **EFFECTIVE DATE:** | 04/22/2019 |

## Property Report

### ORDER INFORMATION:

| | | | |
|---|---|---|---|
| **CLIENT:** | ENTERPRISE BANK<br>4091 MOUNT ROYAL<br>BOULEVARD<br>ALLISON PARK, PA 15101 | **CUSTOMER NAME:** | INGROS FAMILY, LLC, |
| | | **PROPERTY ADDRESS:** | 295 THIRD STREET<br>BEAVER, PA 15009 |
| **ATTENTION:** | LISA KANN | | |
| **REFERENCE #:** | FDI1254734 | **COUNTY:** | BEAVER |

### ASSESSMENT / TAX INFORMATION:

| | | | |
|---|---|---|---|
| **TAX PARCEL:** | 14-001-0220.000 | **SITUATE:** | BOROUGH OF BEAVER |
| | | **LAND:** | $19,100.00 |
| | | **IMPROVEMENTS:** | $380,100.00 |
| | | **TOTAL:** | $399,200.00 |

**COMMENTS:** Taxes reported to the Tax Claim Bureau recorded paid through 2018.

Parcel Nos: combined into Parcel No. 14-001-0220.000

Address Assessed: 260 Wilson Avenue

### DEED INFORMATION:

| | | | |
|---|---|---|---|
| **GRANTOR:** | George J. Campbell and Sheila C.<br>Campbell, his wife | **GRANTEE:** | The Ingros Family LLC |
| **BOOK/VOL:** | | **DATED:** | 01/22/2014 |
| | | **RECORDED:** | 02/03/2014 |
| **INSTRUMENT #:** | 3465071 | | |
| **CONSIDERATION:** | $425,000.00 | | |
| **COMMENTS:** | Conveys all Parcels No. | | |

Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9808

Print Date: 04/29/2019 11:18:43 am

Page 1 of 4

FDI #:     1254734-1
REF #:    FDI1254734

## MORTGAGE INFORMATION:

| | | | | |
|---|---|---|---|---|
| **MORTGAGOR:** | The Ingros Family LLC, by Jeffrey S. Ingros, Member | **MORTGAGEE:** | First National Bank of Pennsylvania | |
| **BOOK/VOL:** | | **DATED:** | 02/17/2015 | |
| | | **RECORDED:** | 02/24/2015 | |
| **INSTRUMENT#:** | 3500671 | | | |
| **AMOUNT:** | $50,000.00 | **OPEN ENDED:** | Yes    AMT:    $50,000.00 | |
| **COMMENTS:** | Secures All Parcels | | | |

Satisfaction Piece, dated 5/27/2016, recorded 6/7/2016, as Instrument No. 3529700, erroneously releases Instrument No. 2015852310.

| | | | | |
|---|---|---|---|---|
| **MORTGAGOR:** | Ingros Family LLC, by Jeffrey S. Ingros, Member, and by Anne H. Ingros, Member | **MORTGAGEE:** | Enterprise Bank | |
| **BOOK/VOL:** | | **DATED:** | 09/14/2018 | |
| | | **RECORDED:** | 09/19/2018 | |
| **INSTRUMENT#:** | 3579294 | | | |
| **AMOUNT:** | $3,179,000.00 | **OPEN ENDED:** | Yes    AMT:    $3,179,000.00 | |
| **COMMENTS:** | Secures All Parcels | | | |

Assignment of Rents dated 9/14/2018, recorded 10/11/2018, as Instrument No. 3580692.

| | | | | |
|---|---|---|---|---|
| **MORTGAGOR:** | Ingros Family, LLC, by Jeffrey S. Ingros, Member, and Anne H. Ingros, Member | **MORTGAGEE:** | Advanced Solutions Consulting Company | |
| **BOOK/VOL:** | | **DATED:** | 11/23/2018 | |
| | | **RECORDED:** | 11/26/2018 | |
| **INSTRUMENT#:** | 3583315 | | | |
| **AMOUNT:** | $400,000.00 | **OPEN ENDED:** | No | |
| **COMMENTS:** | Secures All Parcels | | | |

FDI #:    1254734-1
REF #:    FDI1254734

| JUDGMENT/FEDERAL & STATE TAX LIENS: | | | |
|---|---|---|---|
| PLAINTIFF | Commonwealth of Pennsylvania Department of Revenue | LIEN TYPE: | STATE TAX LIEN |
| DEFENDANT: | Jeffrey S. Ingros and Anne H. Ingros | SSN: | DOB: |
| DOCKET NO: | 2018-30298 | DOCKET DATE: | |
| BOOK/VOL: | | DATED: | |
| PAGE: | | RECORDED: | 01/25/2018 |
| AMOUNT: | $33,160.32 | PLUS: | Penalties and Interest |
| PLAINTIFF | Scott Bruce | LIEN TYPE: | JUDGMENT |
| DEFENDANT: | The Ingros Family LLC, and Jeffrey Ingros | SSN: | DOB: |
| DOCKET NO: | 2018-30949 | DOCKET DATE: | |
| BOOK/VOL: | | DATED: | |
| PAGE: | | RECORDED: | 04/03/2018 |
| AMOUNT: | $39,600.00 | PLUS: | Costs and Interest |
| COMMENTS: | 4/4/2018 Complaint and Confession of Judgment | | |
| PLAINTIFF | Ryan D. Sharbonno | LIEN TYPE: | JUDGMENT |
| DEFENDANT: | The Ingros Family LLC, and Jeffrey S. Ingros | SSN: | DOB: |
| DOCKET NO: | 2018-31137 | DOCKET DATE: | |
| BOOK/VOL: | | DATED: | |
| PAGE: | | RECORDED: | 05/03/2018 |
| AMOUNT: | $60,000.00 | PLUS: | Costs and Interest |
| COMMENTS: | 5/3/2018 Complaint and Confession of Judgment | | |
| PLAINTIFF | Ryan D. Sharbonno | LIEN TYPE: | JUDGMENT |
| DEFENDANT: | The Ingros Family LLC, and Jeffrey C. Ingros | SSN: | DOB: |
| DOCKET NO: | 2018-33331 | DOCKET DATE: | |
| BOOK/VOL: | | DATED: | |
| PAGE: | | RECORDED: | 11/20/2018 |
| AMOUNT: | $460,000.00 | PLUS: | Costs and Interest |
| PLAINTIFF | Internal Revenue Service-Department of the Treasury | LIEN TYPE: | FEDERAL TAX LIEN |
| DEFENDANT: | The Ingros Family LLC and Anne H. Ingros | SSN: | DOB: |
| DOCKET NO: | 2019-50011 | DOCKET DATE: | |
| BOOK/VOL: | | DATED: | |
| PAGE: | | RECORDED: | 03/27/2019 |
| AMOUNT: | $276,070.63 | PLUS: | Penalties and Interest |

Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9808

Print Date: 04/29/2019 11:18:44 am

Page 3 of 4

FDI #:    1254734-1
REF #:    FDI1254734

## LEGAL DESCRIPTION :

All those certain lots or pieces of ground situate in the First Ward of the Borough of
Beaver, County of Beaver and State of Pennsylvania, as more fully described in Deed,
recorded on 2/3/2014 as Instrument No. 3465071.

Parcel No.: 14-001-0220.000

THE INFORMATION CONTAINED WITHIN THIS REPORT IS NOT TO BE CONSIDERED AN EXAMINATION,
CERTIFICATION OR REPRESENTATION OF FACT OR TITLE AND DOES NOT CREATE AND SHALL NOT BE THE BASIS
OF ANY CLAIM FOR NEGLIGENCE, NEGLIGENT MISREPRESENTATION OR OTHER TORT CLAIM OR ACTION.
MOREOVER, THIS REPORT DOES NOT EXPLAIN THE LEGAL STATUS OF TITLE TO REAL ESTATE, THE LEGAL
EFFECT OF ANYTHING FOUND WITHIN THE CHAIN OF TITLE OR THE LEGAL EFFECTS OF OTHER MATTERS
FOUND OF RECORD THAT COULD AFFECT THE MARKETABILITY OF TITLE.

THE SOLE LIABILITY OF FINANCIAL DIMENSIONS, INC. TO ANY PARTY FOR LOSS(ES) SUSTAINED BY RELIANCE
UPON THE INFORMATION PROVIDED WITHIN THIS REPORT SHALL BE LIMITED TO THOSE AMOUNTS PAID FOR
SAID REPORT.

Thank you for selecting Financial Dimensions, Inc.!

Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9808

File No. 13-498

# This Indenture

Made the 22nd day of January, 2014,

Between

**3465071**
4 Pages
02/03/2014 12:15.21 PM
Beaver County
DEED        $55.00

AMERICAN CENTRAL SERVICES

GEORGE J. CAMPBELL and SHEILA C. CAMPBELL, his wife

(hereinafter called the Grantors)

*AND*

THE INGROS FAMILY LLC

(hereinafter called the Grantee)

Witnesseth, That the said Grantors in consideration of Four Hundred Twenty-Five Thousand And 00/100 Dollars ($425,000,00) paid to the Grantors by the Grantee, receipt of which is hereby acknowledged, do grant, bargain, sell and convey to the said Grantee, their assigns, the survivor of them and the survivor's personal representatives and assigns,

ALL that certain lot or piece of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the General Plan of Outlots for said Borough, bounded and described as follows, to wit:

BEGINNING at a point on the South side of Third Street, said point being located a distance of 130 feet East of the East line of Wilson Avenue (as measured along said South side of Third Street); thence extending eastwardly along the South side of said Third Street, a distance of 65 feet to a post; thence southwardly by line of land now or formerly of J.R. Leonard, a distance of 160 feet to a post; thence westwardly along the line of land of Emma C.D. Campbell (formerly of J.B. Wilson) a distance of 65 feet to a post; thence northwardly by line of land of Emma C.D. Campbell (formerly of J.B. Wilson) 160 feet to a point at the place of beginning.

BEING designated as Parcel No. 14-001-0216:000

Parcel One: ALL that certain piece, parcel or lot of land lying and being situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Out Lot No. 13 in the General Plan of Out Lots for the said Borough of Beaver, bounded and described as follows, to wit:

BEGINNING at a point on the North side of Center Alley 120 feet East of Wilson Avenue; thence northwardly and parallel with Wilson Avenue and along the line of lands formerly of Emma C.D. Campbell and lands now or formerly of Flora D. Kerr, 90 feet to lands now or formerly of John B. Wilson; thence eastwardly and parallel with Center Alley and Third Street along the line of lands now or formerly of said John B. Wilson, 75 feet to the line of lands now or formerly of J.R. Leonard; thence southwardly and parallel with Wilson Avenue and along the line of lands now or formerly of J.R. Leonard, 90 feet to Center Alley; thence westwardly and parallel and along Center Alley, 75 feet to the place of beginning. Having a frontage of 75 feet on Center Alley, and extending back therefrom of equal width, 90 feet to lands now or formerly of John B. Wilson aforesaid.

Parcel Two:  ALL that certain parcel or lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Out Lot No. 13 in the General Plan of Outlots of the Borough of Beaver, bounded and described as follows, to wit:

ON the North by Third Street; on the East by lot formerly owned by Laura Smith; on the South by land formerly owned by George H. Campbell, and land formerly owned by

TSS240-00 COAL





## JANICE JESCHKE BEALL
810 Third Street
Beaver, PA 15009

*Receipt*

Receipt Date: 09/19/2018 08:35:56 AM
RECEIPT # 2018967027

Recording Clerk: MAP
Cash Drawer: CASH1
Rec'd Frm: LAMPL SETTLEMENT
SERVICES/MAIL

Instr#: 3579294
DOC: MORTGAGE
OR Party: INGROS FAMILY LLC
EE Party: ENTERPRISE BANK

Recording Fees
Cover Page                    $2.00
Recording Fee                $13.00
Writ Tax                      $0.50
Affordable Housing           $13.00
Record Improvement Fund       $5.00
Additional Pages             $16.00
Other Fees                    $2.00
Justice Fund                 $40.25
Reference Fee                 $2.00
Demolition Fund              $15.00

DOCUMENT TOTAL: ---->        $108.75


Receipt Summary
TOTAL RECEIPT: ---->         $108.75
TOTAL RECEIVED: ---->        $108.75

CASH BACK:     ---->           $0.00

PAYMENTS
Check # 7436 ->              $108.75
LAMPL SETTLEMENT SERVICES/MAIL



EXHIBIT
tabbies
E



OMB Approval No. 2502-0265

## A.  Settlement Statement (HUD-1)

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ RHS | 3. ☒ Conv. Unins. | 6. File Number. 6102-223 | 7. Loan Number. | 8. Mortgage Insurance Case Number. |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

**C.  Note:**  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower. | E. Name and Address of Seller. | F. Name and Address of Lender. |
|---|---|---|
| Ingras Family, LLC 295 Third Street Beaver, PA 15009 | | Enterprise Bank, its successors and/or assigns 4091 Mount Royal Blvd Allison Park, PA 15101-2917 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 295 Third Street Beaver, PA 15009 Beaver County, Pennsylvania | Lampl Settlement Services 435 South Maple Ave. Greensburg, PA 15501          Ph.   (724)834-3188 Place of Settlement 435 South Maple Ave. Greensburg, PA 15501 | September 14, 2018 |

| J. | Summary of Borrower's transaction | | K. | Summary of Seller's transaction | |
|---|---|---|---|---|---|
| 100. | Gross Amount Due from Borrower. | | 400. | Gross Amount Due to Seller. | |
| 101. | Contract sales price | | 401. | Contract sales price | |
| 102. | Personal property | | 402. | Personal property | |
| 103. | Settlement Charges to Borrower (Line 1400) | 328,566.89 | 403. | | |
| 104. | | | 404. | | |
| 105. | Mortgage payoff to First National Bank of PA | 2,642,766.33 | 405. | | |
| **Adjustments for items paid by Seller in advance** | | | **Adjustments for items paid by Seller in advance** | | |
| 106. | City/Town Taxes                      to | | 406. | City/Town Taxes                      to | |
| 107. | County Taxes                          to | | 407. | County Taxes                          to | |
| 108. | Assessments                          to | | 408. | Assessments                          to | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| **120.** | **Gross Amount Due from Borrower** | 2,971,333.22 | **420.** | **Gross Amount Due to Seller** | |
| 200. | Amounts Paid by or in Behalf of Borrower | | 500. | Reductions In Amount Due Seller | |
| 201. | Deposit or earnest money | | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | 3,179,000.00 | 502. | Settlement charges to Seller (Line 1400) | |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff First Mortgage | |
| 205. | | | 505. | Payoff Second Mortgage | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| **Adjustments for items unpaid by Seller** | | | **Adjustments for items unpaid by Seller** | | |
| 210. | City/Town Taxes                      to | | 510. | City/Town Taxes                      to | |
| 211. | County Taxes                          to | | 511. | County Taxes                          to | |
| 212. | Assessments                          to | | 512. | Assessments                          to | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| **220.** | **Total Paid by/for Borrower** | 3,179,000.00 | **520.** | **Total Reduction Amount Due Seller** | |
| 300. | Cash at Settlement from/to Borrower | | 600. | Cash at settlement to/from Seller | |
| 301. | Gross amount due from Borrower (line 120) | 2,971,333.22 | 601. | Gross amount due to Seller (line 420) | |
| 302. | Less amount paid by/for Borrower (line 220) | 3,179,000.00 | 602. | Less reductions due Seller (line 520) | |
| **303. Cash**  ☐ From  ☒ To Borrower | | 207,666.78 | **603. Cash**  ☐ To  ☐ From Seller | | 0.00 |

* Paid outside of closing by borrower(b), seller(S), lender(L), or third-party(P)

The undersigned hereby acknowledge receipt of a completed copy of this statement & any attachments referred to herein.

Borrower       Ingras Family, LLC

BY: _____

_____

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting this data. The agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

HUD-1
(6102-223.PFD/6102-223/7)



EXHIBIT

F

| L. Settlement Charges | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Real Estate Broker Fees | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| 705. | | | | |
| 800. Items Payable in Connection with Loan | | | | |
| 801. Our origination charge | $ | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | $ | (from GFE #2) | | |
| 803. Your adjusted origination charges to    Enterprise Bank, its successors and/or assigns | | (from GFE #A) | 0.00 | |
| 804. Appraisal fee | to   Enterprise Bank POC 3950.00 | (from GFE #3) | | |
| 805. Credit Report | to   Enterprise Bank | (from GFE #3) | 32.00 | |
| 806. Tax service | to | (from GFE #3) | | |
| 807. Flood certification | to   Enterprise Bank | (from GFE #3) | 30.00 | |
| 808. Title review | to   HRS Services Inc. | (from GFE #3) | 350.00 | |
| 809. Property Reports (post clos | to   Enterprise Bank | (from GFE #3) | 80.00 | |
| 810. Corporate document copie | to   Enterprise Bank | (from GFE #3) | 9.00 | |
| 811. Due diligence fee | Enterprise Bank POC 500.00 | (from GFE #3) | | |
| 812. Escrow for real estate taxes | to   Enterprise Bank | (from GFE #   3) | 4,250.00 | |
| 900. Items Required by Lender to Be Paid in Advance | | | | |
| 901. Daily interest charges from   09/14/18   to  10/01/18 | 17 @ $/day | (from GFE #10) | | |
| 902. Mortgage insurance premium for   months to | | (from GFE #9) | | |
| 903. Homeowner's insurance for   years to | | (from GFE #11) | | |
| 904. | | (from GFE #11) | | |
| 905. | | (from GFE #11) | | |
| 1000. Reserves Deposited with Lender | | | | |
| 1001. Initial deposit for your escrow account | | (from GFE #9) | | |
| 1002. Homeowner's Insurance | months  @ $   per  month | $ | | |
| 1003. Mortgage Insurance | months  @ $   per  month | $ | | |
| 1004. Property taxes | | $ | | |
| 1005. | | $ | | |
| 1006. | months  @ $   per  month | $ | | |
| 1007. | months  @ $   per  month | $ | | |
| 1008. | | $ | | |
| 1009. | | $ | | |
| 1100. Title Charges | | | | |
| 1101. Title services and lender's title insurance | | (from GFE #4) | 10,936.46 | |
| 1102. Settlement or closing fee | | $ | | |
| 1103. Owner's title insurance to Fidelity National Title Insurance Co | | (from GFE #5) | | |
| 1104. Lender's title insurance to Fidelity National Title Insurance Co | | $   10,871.48 | | |
| 1105. Lender's title policy limit | $   3,179,000.00 | | | |
| 1106. Owner's title policy limit | $ | | | |
| 1107. Agent's portion of the total title insurance premium | to Lampl Settlement Services | $   9,134.49 | | |
| 1108. Underwriter's portion of the total title insurance premium | to Fidelity National Title Insurance Co | $   1,736.97 | | |
| 1109. | | $ | | |
| 1110. | | $ | | |
| 1111. | | $ | | |
| 1112. | | $ | | |
| 1113. | | $ | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Government recording charges | to   Recorder of Deeds of Beaver County | (from GFE #7) | 181.50 | |
| 1202. Deed $   Mortgage $   108.75   Releases $ | | Other $   72.75 | | |
| 1203. Transfer taxes | | (from GFE #8) | | |
| 1204. City/County tax/stamps | $   $ | | | |
| 1205. State tax/stamps | $   $ | | | |
| 1206. | | | | |
| 1207. | | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Required services that you can shop for | | (from GFE #6) | | |
| 1302. 2018 County Taxes | to   Beaver County Treasurer | $ | 11,417.12 | |
| 1303. Del taxes through 2017 | to   Beaver County Tax Claim Office | $ | 46,172.54 | |
| 1304. 2018 Borough taxes | to   Janet Shute Tax Collector | $ | 10,536.88 | |
| 1305. See additl distr. exhibit | to | $ | 80,629.95 | |
| 1306. Contractor fee | to   RAM Accounsical Corporation | $ | 87,068.35 | |
| 1307. Contractor fee | to   Wagner Electric | $ | 32,133.00 | |
| 1308. Contractor fee | to   M & R Woodworking | $ | 19,827.64 | |
| 1309. Contractor fee | to   Preferred Fire | $ | 13,100.00 | |
| 1310. Contractor fee | to   CBRE | $ | 11,950.45 | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | 328,568.89 | |

* Paid outside of closing by borrower(B), seller(S), lender(L), or third party(T)

Lampl Settlement Services, Settlement Agent

Certified to be a true copy.
The undersigned hereby acknowledge receipt of a completed copy of this statement & any attachments referred to herein

Borrower   Ingros Family, LLC

BY:_____

HUD-1
(6102-223.PFD6102-223/7)

## HUD-1 Attachment

Borrower (s): Ingros Family, LLC
295 Third Street
Beaver, PA 15009
Lender: Enterprise Bank, it successors and/or assigns
Settlement Agent: Lampl Settlement Services
(724)834-3188
Place of Settlement: 435 South Maple Ave.
Greensburg, PA 15601
Settlement Date: September 14, 2018
Property Location: 295 Third Street
Beaver, PA 15009
Beaver County, Pennsylvania

### Additional Disbursements

| Payee/Description | Note/Ref No. | Borrower | Seller |
|---|---|---|---|
| Phase 3 Design<br>Contractor fee | | 11,145.00 | |
| Colonial Painting<br>Contractor fee | | 10,344.35 | |
| Harris Masonary<br>Contractor fee | | 7,900.00 | |
| Alten and Shariff<br>Contractor fee | | 1,400.00 | |
| Janet Shute Tax Collector<br>2018 school taxes | | 35,129.60 | |
| MCDonald Plusmbing/HVAC<br>Contractor fee | | 14,711.00 | |
| Total Additional Disbursements shown on Line 1305 | | $  80,629.95 | $  0.00 |

### Borrower Loan Payoff Details

| Mortgage payoff | to First National Bank of PA | | |
|---|---|---|---|
| Loan Payoff | As of | | |
| Total Additional Interest | 2,922.25 | 5 days @ | 584.450000 Per Diem |
| Total Loan Payoff | 2,642,766.33 | | |

### Title Services and Lender's Title Insurance Details

| | | BORROWER | SELLER |
|---|---|---|---|
| CPL<br>to   Fidelity Natinal Title | | 125.00 | |
| Lender's title Insurance<br>to   Fidelity National Title Insurance Co | | 10,871.46 | |
| | Total | $  10,996.46 | $  0.00 |

### Lender's Title Insurance
*fees also shown above in Title Services and Lender's Title Insurance Details

| | | BORROWER | SELLER |
|---|---|---|---|
| Lender's Policy Premium<br>to   Fidelity National Title Insurance Co | | 10,446.46 | |
| Lender's Endorsement Charges<br>Endorsement | Endorsement Charge | 425.00 | |
| | Total | $  10,871.46 | $  0.00 |

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(8102-223.PFD8102-223/7)



**FINANCIAL DIMENSIONS**
INC
APPRAISAL . TITLE . SETTLEMENT
"SINCE 1987"

| | |
|---|---|
| **FDI #:** | 1254734-1 |
| **REPORT DATE:** | 04/29/2019 |
| **EFFECTIVE DATE:** | 04/22/2019 |

# Property Report

## ORDER INFORMATION:

| | | | |
|---|---|---|---|
| **CLIENT:** | ENTERPRISE BANK<br>4091 MOUNT ROYAL<br>BOULEVARD<br>ALLISON PARK, PA 15101 | **CUSTOMER NAME:** | INGROS FAMILY, LLC, |
| | | **PROPERTY ADDRESS:** | 295 THIRD STREET<br>BEAVER, PA 15009 |
| **ATTENTION:** | LISA KANN | | |
| **REFERENCE #:** | FDI1254734 | **COUNTY:** | BEAVER |

## ASSESSMENT / TAX INFORMATION:

| | | | |
|---|---|---|---|
| **TAX PARCEL:** | 14-001-0220.000 | **SITUATE:** | BOROUGH OF BEAVER |
| | | **LAND:** | $19,100.00 |
| | | **IMPROVEMENTS:** | $380,100.00 |
| | | **TOTAL:** | $399,200.00 |

**COMMENTS:**   Taxes reported to the Tax Claim Bureau recorded paid through 2018.

Parcel Nos. combined into Parcel No. 14-001-0220.000

Address Assessed: 260 Wilson Avenue

## DEED INFORMATION:

| | | | |
|---|---|---|---|
| **GRANTOR:** | George J. Campbell and Sheila C.<br>Campbell, his wife | **GRANTEE:** | The Ingros Family LLC |
| **BOOK/VOL:** | | **DATED:** | 01/22/2014 |
| | | **RECORDED:** | 02/03/2014 |
| **INSTRUMENT #:** | 3465071 | | |
| **CONSIDERATION:** | $425,000.00 | | |
| **COMMENTS:** | Conveys all Parcels No. | | |

Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9808



**EXHIBIT**

G

FDI #:   1254734-1
REF #:   FDI1254734

## MORTGAGE INFORMATION:

| | | | |
|---|---|---|---|
| **MORTGAGOR:** | The Ingros Family LLC, by Jeffrey S. Ingros, Member | **MORTGAGEE:** | First National Bank of Pennsylvania |
| **BOOK/VOL:** | | **DATED:** | 02/17/2015 |
| | | **RECORDED:** | 02/24/2015 |
| **INSTRUMENT#:** | 3500671 | | |
| **AMOUNT:** | $50,000.00 | **OPEN ENDED:** | Yes   **AMT:**   $50,000.00 |
| **COMMENTS:** | Secures All Parcels | | |

Satisfaction Piece, dated 5/27/2016, recorded 6/7/2016, as Instrument No. 3529700, erroneously releases Instrument No. 201585231 0.

| | | | |
|---|---|---|---|
| **MORTGAGOR:** | Ingros Family LLC, by Jeffrey S. Ingros, Member, and by Anne H. Ingros, Member | **MORTGAGEE:** | Enterprise Bank |
| **BOOK/VOL:** | | **DATED:** | 09/14/2018 |
| | | **RECORDED:** | 09/19/2018 |
| **INSTRUMENT#:** | 3579294 | | |
| **AMOUNT:** | $3,179,000.00 | **OPEN ENDED:** | Yes   **AMT:**   $3,179,000.00 |
| **COMMENTS:** | Secures All Parcels | | |

Assignment of Rents dated 9/14/2018, recorded 10/11/2018, as Instrument No. 3580692.

| | | | |
|---|---|---|---|
| **MORTGAGOR:** | Ingros Family, LLC, by Jeffrey S. Ingros, Member, and Anne H. Ingros, Member | **MORTGAGEE:** | Advanced Solutions Consulting Company |
| **BOOK/VOL:** | | **DATED:** | 11/23/2018 |
| | | **RECORDED:** | 11/26/2018 |
| **INSTRUMENT#:** | 3583315 | | |
| **AMOUNT:** | $400,000.00 | **OPEN ENDED:** | No |
| **COMMENTS:** | Secures All Parcels | | |

Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9808

Print Date: 04/29/2019 11:18:44 am

Page 2 of 4

FDI #:    1254734-1
REF #:    FDI1254734

## JUDGMENT/FEDERAL & STATE TAX LIENS:

| | | | |
|---|---|---|---|
| **PLAINTIFF** | Commonwealth of Pennsylvania Department of Revenue | **LIEN TYPE:** | STATE TAX LIEN |
| **DEFENDANT:** | Jeffrey S. Ingros and Anne H. Ingros | **SSN:** | **DOB:** |
| **DOCKET NO:** | 2018-30298 | **DOCKET DATE:** | |
| **BOOK/VOL:** | | **DATED:** | |
| **PAGE:** | | **RECORDED:** | 01/25/2018 |
| **AMOUNT:** | $33,160.32 | **PLUS:** | Penalties and Interest |

| | | | |
|---|---|---|---|
| **PLAINTIFF** | Scott Bruce | **LIEN TYPE:** | JUDGMENT |
| **DEFENDANT:** | The Ingros Family LLC, and Jeffrey Ingros | **SSN:** | **DOB:** |
| **DOCKET NO:** | 2018-30949 | **DOCKET DATE:** | |
| **BOOK/VOL:** | | **DATED:** | |
| **PAGE:** | | **RECORDED:** | 04/03/2018 |
| **AMOUNT:** | $39,600.00 | **PLUS:** | Costs and Interest |
| **COMMENTS:** | 4/4/2018 Complaint and Confession of Judgment | | |

| | | | |
|---|---|---|---|
| **PLAINTIFF** | Ryan D. Sharbonnbrp | **LIEN TYPE:** | JUDGMENT |
| **DEFENDANT:** | The Ingros Family LLC, and Jeffrey S. Ingros | **SSN:** | **DOB:** |
| **DOCKET NO:** | 2018-31137 | **DOCKET DATE:** | |
| **BOOK/VOL:** | | **DATED:** | |
| **PAGE:** | | **RECORDED:** | 05/03/2018 |
| **AMOUNT:** | $60,000.00 | **PLUS:** | Costs and Interest |
| **COMMENTS:** | 5/3/2018 Complaint and Confession of Judgment. | | |

| | | | |
|---|---|---|---|
| **PLAINTIFF** | Ryan D. Sharbonno | **LIEN TYPE:** | JUDGMENT |
| **DEFENDANT:** | The Ingros Family LLC, and Jeffrey C. Ingros | **SSN:** | **DOB:** |
| **DOCKET NO:** | 2018-33331 | **DOCKET DATE:** | |
| **BOOK/VOL:** | | **DATED:** | |
| **PAGE:** | | **RECORDED:** | 11/20/2018 |
| **AMOUNT:** | $60,000.00 | **PLUS:** | Costs and Interest |

| | | | |
|---|---|---|---|
| **PLAINTIFF** | Internal Revenue Service-Department of the Treasury | **LIEN TYPE:** | FEDERAL TAX LIEN |
| **DEFENDANT:** | The Ingros Family LLC and Anne H. Ingros | **SSN:** | **DOB:** |
| **DOCKET NO:** | 2019-50011 | **DOCKET DATE:** | |
| **BOOK/VOL:** | | **DATED:** | |
| **PAGE:** | | **RECORDED:** | 03/27/2019 |
| **AMOUNT:** | $276,070.63 | **PLUS:** | Penalties and Interest |

Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9803

Print Date: 04/29/2019 11:18:44 am

Page 3 of 4

FDI #:    1254734-1
REF #:    FDI1254734

## LEGAL DESCRIPTION :

All those certain lots or pieces of ground situate in the First Ward of the Borough of
Beaver, County of Beaver and State of Pennsylvania, as more fully described in Deed,
recorded on 2/3/2014 as Instrument No. 3465071.

Parcel No.: 14-001-0220.000

THE INFORMATION CONTAINED WITHIN THIS REPORT IS NOT TO BE CONSIDERED AN EXAMINATION,
CERTIFICATION OR REPRESENTATION OF FACT OR TITLE AND DOES NOT CREATE AND SHALL NOT BE THE BASIS
OF ANY CLAIM FOR NEGLIGENCE, NEGLIGENT MISREPRESENTATION OR OTHER TORT CLAIM OR ACTION.
MOREOVER, THIS REPORT DOES NOT EXPLAIN THE LEGAL STATUS OF TITLE TO REAL ESTATE, THE LEGAL
EFFECT OF ANYTHING FOUND WITHIN THE CHAIN OF TITLE OR THE LEGAL EFFECTS OF OTHER MATTERS
FOUND OF RECORD THAT COULD AFFECT THE MARKETABILITY OF TITLE.

THE SOLE LIABILITY OF FINANCIAL DIMENSIONS, INC. TO ANY PARTY FOR LOSS(ES) SUSTAINED BY RELIANCE
UPON THE INFORMATION PROVIDED WITHIN THIS REPORT SHALL BE LIMITED TO THOSE AMOUNTS PAID FOR
SAID REPORT.

Thank you for selecting Financial Dimensions, Inc.!
Financial Dimensions, Inc.
7025 Clairton Road
West Mifflin, PA 15122
1-800-858-9808

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature: _____

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

## VERIFICATION

I, Joseph A. Fidler, hereby state that I am Senior Vice President and In-House Counsel

for Enterprise Bank, that I am authorized to make this verification on its behalf and that the facts

set forth in the preceding Complaint are true and correct to the best of my knowledge,

information and belief and that the statements made herein are subject to 18 Pa.C.S.A. §4904

relating to unsworn falsification to authorities.

JOSEPH A. FIDLER

Dated:    July 17, 2020

RECEIPT FOR PAYMENT
====================

Beaver County Prothonotary                    Receipt Date   7/21/2020
    MICHAEL ROSSI                             Receipt Time   12:36:15
    Beaver, PA  15009                         Receipt No.      495168


---    ENTERPRISE BANK (vs) THE INGROS FAMILY LLC ETAL    ---

    Case Number    2020-10702

    Received of:   FOX ROTHSCHILD LLP
                   BARB

----------------------- Transaction Distribution -----------------------

| Cost/Fee Description | Payment Amount | Payee Name |
|---|---|---|
| TAX ON CMPLT | .50 | BUREAU OF RECEIPTS & CNTR.M.D. |
| JCP SURCHARGE | 40.25 | BUREAU OF RECEIPTS & CNTR.M.D. |
| ACT 164 | 5.00 | ACT 164 |
| SET. DISCON W/O | 12.25 | TREASURER OF BEAVER COUNTY |
| COMPLAINT FILED | 119.00 | TREASURER OF BEAVER COUNTY |
| | ---------------- | |
| | $177.00 | |


Check# 661076              $177.00
                        ----------------
Total Received.........     $177.00


Case Balance Due:          $.00

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

CIVIL DIVISION

      Plaintiff,

NO.  2020-10702

      v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

**PRAECIPE TO INDEX LIS
PENDENS**

      Defendants.

Filed on behalf of Plaintiff,
Enterprise Bank

Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA  15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com

FILED OR ISSUED

2020 JUL 31 PM 3:13

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA



IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

        Plaintiff,

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

        Defendants.

CIVIL DIVISION

NO.  2020-10702



### PRAECIPE TO INDEX LIS PENDENS

TO THE PROTHONOTARY:

Please enter the above action as a *lis pendens* against The Ingros Family, LLC and Jeffrey S. Ingros and the premises known as 295 Third Street, Beaver, PA (also identified elsewhere as 260 Wilson Avenue, Beaver, PA) of Beaver County.  The premises are designated by The Recorder of Deeds of Beaver County as Parcel Nos. 14-001-0216.000, 14-001-0217.000, 14-001-220.000, 14-001-0218.000 and 14-001-0219.000; all as described in the Legal Description attached as Exhibit A hereto.  The undersigned certifies that this Lis Pendens involves title to the real estate located at 295 Third Street, Beaver, PA.

LAUREN P. MCKENNA, ESQUIRE
WILLIAM L. STANG, ESQUIRE
FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
(412) 391-1334

Attorneys for Plaintiff,
ENTERPRISE BANK

Dated:   July 31 2020

Active\1 12782930.v1-7/31/20

ALL THAT CERTAIN piece, parcel or tract of land located in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlet No. 13 in the general Plan of Outlots for said Borough bounded and more fully described as follows:

BEGINNING at a point on the South side of Third Street, said point being located a distance of 130 feet East of the East line of Wilson Avenue (as measured along said South side of Third Street); thence extending eastwardly along the South side of said Third Street, a distance of 65 feet to a post; thence southwardly by line of land now or formerly of J.R. Leonard, a distance of 160 feet to a post; thence westwardly along the line of land of Emma C.D. Campbell (formerly of J.B. Wilson) a distance of 65 feet to a post; thence northwardly by line of land of Emma C.D. Campbell (formerly of J.B. Wilson) 160 feet to a point at the place of beginning..

BEING designated as Parcel No. 14-001-0216.000

Parcel One: ALL that certain piece, parcel or lot of land lying and being situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Out Lot No. 13 in the General Plan of Out Lots for the said Borough of Beaver, bounded and described as follows, to wit:

BEGINNING at a point on the North side of Center Alley 120 feet East of Wilson Avenue; thence northwardly and parallel with Wilson Avenue and along the line of lands formerly of Emma C.D. Campbell and lands now or formerly of Flora D. Kerr, 90 feet to lands now or formerly of John B. Wilson; thence eastwardly and parallel with Center Alley and Third Street along the line of lands now or formerly of said John B. Wilson, 75 feet to the line of lands now or formerly of J.R. Leonard; 90 feet to Center Alley; thence westwardly and parallel and along Center Alley, 75 feet to the place of beginning. Having a frontage of 75 feet on Center Alley, and extending back therefrom of equal width, 90 feet to lands now or formerly of John B. Wilson aforesaid.

Parcel Two: ALL that certain parcel or lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania being part of Out Lot No. 13 in the General Plan of Outlots of the Borough of Beaver, bounded and described as follows, to wit:

ON the North by Third Street; on the East by lot formerly owned by Laura Smith; on the South by land formerly owned by George H. Campbell, and land formerly owned by Ebert Long; and on the West by Wilson Avenue, the said lot being situate at the Southeast corner of Third Street and Wilson Avenue, and having a frontage of One hundred thirty (130) feet, more or less, on Third Street and extending back therefrom of equal width along Wilson Avenue, one hundred sixty (160) feet, more or less, to land formerly owned by George H. Campbell and land formerly owned by Ebert Long.

Parcel Three: ALL that certain piece, parcel or lot of land situate in the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING on the North by the land formerly of George H. Campbell; on the East by the land



EXHIBIT

A

formerly of George H. Campbell on the South by Center Alley, and on the West by Wilson Avenue. Said lot having a frontage of four (4) feet on Wilson Avenue and extending back therefrom One hundred twenty (120) feet to the land formerly of George H. Campbell.

BEING designated as Parcel Nos. 14-001-0217.000 and 14-001-0220.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at a point on the eastern line of Wilson Avenue, which point is 45 feet northwardly from the intersection of the eastern line of Wilson Avenue with the northern line of Center Alley; thence northwardly by the eastern line of Wilson Avenue, 45 feet to a stake; thence eastwardly by a line parallel with the norther line of Center Alley and 90 feet distant therefrom 120 feet to a stake; thence by a line parallel with the eastern line of Wilson Avenue, southwardly 45 feet to a stake; thence by a line parallel to the northern line of Center Alley and 45 feet distant therefrom, 120 feet in a westerly direction to the place of beginning.

BEING designated as Parcel No. 14-001-0218.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the General Plan, bounded and described as follows, to wit:

ON the North by land now or formerly of J.B. Wilson; on the East by land now or formerly of George H. Campbell; on the South by Center Alley; and on the West by Wilson Avenue. Said lot having a frontage of 41 feet on Wilson Avenue and extending back therefrom 120 feet to land now or formerly of George H. Campbell.

BEING designated as Parcel No. 14-001-0219.000

Under and subject to easements, rights of way, oil and gas leases, restrictions, reservations, exceptions, agreements and coal and mining rights as set forth in prior instruments of record.

As to Parcel No. 14-001-216.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in Deed Book 1510, page 750.

As to Parcel Nos. 14-001-0217.000 and 14-001-0220.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in Deed Book 1500, page 707.

As to Parcel No. 14-001-0218.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in

Deed Book 1349, page 504.

As to Parcel No. 14-001-0219.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in Deed Book 1556, page 555.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature: _____

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

MICHAEL ROSS
PROTHONOTARY
BEAVER COUNTY, PA

2020 JUL 31  PM 3: 13

FILED OR ISSU

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2020, a true and correct copy of the

foregoing Praecipe to Index Lis Pendens was served upon the following via email and U.S. mail,

first class, postage prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA 15106

FOX ROTHSCHILD LLP

By: _____
William L. Stang, Esquire

RECEIPT FOR PAYMENT
====================

```
Beaver County Prothonotary                    Receipt Date  7/31/2020
    MICHAEL ROSSI                             Receipt Time   15:11:43
    Beaver, PA  15009                         Receipt No.      495510


    ENTERPRISE BANK (vs) THE INGROS FAMILY LLC ETAL

    Case Number    2020-10702

    Received of:   LAUREN MCKENNA
                   MC
```

------------------------ Transaction Distribution ------------------------

| Cost/Fee Description | Payment Amount | Payee Name |
|---|---|---|
| JUDG/LIS PENDEN | 18.25 | TREASURER OF BEAVER COUNTY |
| CERTIFIED COPY | 5.75 | TREASURER OF BEAVER COUNTY |
| | $24.00 | |

```
Cash                           $24.00
                          ----------------
Total Received.........        $24.00


Case Balance Due:               $.00
```

FILED OR ISSUED
2020 JUL 31 ☲ 3: 15
MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

        Plaintiff,

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

        Defendants.

CIVIL DIVISION

NO.  2020-10702

**NOTICE OF LIS PENDENS**

Filed on behalf of Plaintiff,
Enterprise Bank

Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA  15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com

FILED OR ISSUED

2020 AUG 24  AM 7: 54

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

LW

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

       Plaintiff,                              NO. 2020-10702

      v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

       Defendants.



## NOTICE OF LIS PENDENS

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF BEAVER

TO THE RECORDER OF DEEDS OF BEAVER COUNTY:

You are hereby notified that on July 21, 2020, Plaintiff filed a Complaint in the Court of

Common Pleas of Beaver County in the present matter seeking, among other things, a

declaration that the mortgage made in favor of Enterprise Bank which was recorded on

September 19, 2018 with the Recorder of Deeds of Beaver County at Instrument No. 3579294, is

a valid first lien on the Premises described herein below, and that the following are all the names

of the parties to said action:

| | |
|---|---|
| Name of Plaintiff: | Enterprise Bank |
| Name of Defendants: | The Ingros Family, LLC a/k/a Ingros Family, LLC and Ryan Sharbonno |
| Kind of Suit: | Complaint – Declaratory Relief and Reformation |

The following described real estate situated in Beaver County, Pennsylvania, is involved

in said suit. The Property is designated by the Recorder of Deeds of Beaver County as Tax

Parcel Nos. 14-001-0216.000, 14-001-0217.000, 14-001-0220.000, 14-001-0218.000 and 14-

001-0219.000 situate in the Borough of Beaver, Beaver County, Pennsylvania being more fully

described in the Deed dated January 22, 2014 conveying said Premises to The Ingros Family,

LLC and recorded in the Office of the Beaver County Recorder of Deeds at Deed Book Volume

1556, Page 555, a copy of which is attached as Exhibit "A" to this Notice of Lis Pendens, and is

incorporated herein by reference. A true and correct copy of a Praecipe to Index Lis Pendens

filed on July 31, 2020 is attached as Exhibit "B" hereto.

Respectfully submitted,

FOX ROTHSCHILD LLP

LAUREN P. MCKENNA, ESQUIRE
WILLIAM L. STANG, ESQUIRE
FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
(412) 391-1334

Attorneys for Plaintiff,
ENTERPRISE BANK

2

COMMONWEALTH OF PENNSYLVANIA    )
                                   ) SS:
COUNTY OF ALLEGHENY               )

On this **31ST** day of July, 2020, before me, the undersigned officer, a Notary Public,
personally appeared William L. Stang, Esquire, known to me (or satisfactory proven) to be the
person whose name is subscribed to the within instrument, and acknowledged that he executed the
same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and seal.

Veronica Lee Azzarella
Notary Public

My Commission expires: **May 28, 2023**

Commonwealth of Pennsylvania - Notary Seal
VERONICA LEE AZZARELLA - Notary Public
Allegheny County
My Commission Expires May 28, 2023
Commission Number 1290954

3

File No. 13-498

# This Indenture

Made the 22ᵈ day of January, 2014,

Between

3465071
4 Pages
02/03/2014 12:15 71 PM
Beaver County
DEED                    $5560

GEORGE J. CAMPBELL and SHEILA C. CAMPBELL, his wife

(hereinafter called the Grantors)

## A N D

THE INGROS FAMILY LLC

(hereinafter called the Grantee)

Witnesseth, That the said Grantors in consideration of Four Hundred Twenty-Five Thousand And 00/100
Dollars ($425,000.00) paid to the Grantors by the Grantee, receipt of which is hereby acknowledged, do grant,
bargain, sell and convey to the said Grantee, their assigns, the survivor of them and the survivor's personal
representatives and assigns,

ALL that certain lot or piece of land situate in the First Ward of the Borough of Beaver,
County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the
General Plan of Outlots for said Borough, bounded and described as follows, to wit:

BEGINNING at a point on the South side of Third Street, said point being located a
distance of 130 feet East of the East line of Wilson Avenue (as measured along said
South side of Third Street); thence extending eastwardly along the South side of said
Third Street, a distance of 65 feet to a post; thence southwardly by line of land now or
formerly of J.R. Leonard, a distance of 160 feet to a post; thence westwardly along the
line of land of Emma C.D. Campbell (formerly of J.B. Wilson) a distance of 65 feet to a
post; thence northwardly by line of land of Emma C.D. Campbell (formerly of J.B.
Wilson) 160 feet to a point at the place of beginning.

BEING designated as Parcel No. 14-001-0216.000

Parcel One: ALL that certain piece, parcel or lot of land lying and being situate in the
First Ward of the Borough of Beaver, County of Beaver and Commonwealth of
Pennsylvania, being part of Out Lot No. 13 in the General Plan of Out Lots for the said
Borough of Beaver, bounded and described as follows, to wit:

BEGINNING at a point on the North side of Center Alley 120 feet East of Wilson
Avenue; thence northwardly and parallel with Wilson Avenue and along the line of lands
formerly of Emma C.D. Campbell and lands now or formerly of Flora D. Kerr, 90 feet to
lands now or formerly of John B. Wilson; thence eastwardly and parallel with Center
Alley and Third Street along the line of lands now or formerly of said John B. Wilson, 75
feet to the line of lands now or formerly of J.R. Leonard; thence southwardly and parallel
with Wilson Avenue and along the line of lands now or formerly of J.R. Leonard, 90 feet
to Center Alley; thence westwardly and parallel and along Center Alley, 75 feet to the
place of beginning. Having a frontage of 75 feet on Center Alley, and extending back
therefrom of equal width, 90 feet to lands now or formerly of John B. Wilson aforesaid.

Parcel Two: ALL that certain parcel or lot of land situate in the First Ward of the
Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of
Out Lot No. 13 in the General Plan of Outlots of the Borough of Beaver, bounded and
described as follows, to wit:

ON the North by Third Street; on the East by lot formerly owned by Laura Smith; on the
South by land formerly owned by George H. Campbell, and land formerly owned by

T3S240-00 COAL

**EXHIBIT**

A

File No. 13-498

Ebert Long; and on the West by Wilson Avenue, the said lot being situate at the Southeast corner of Third Street and Wilson Avenue, and having a frontage of One hundred thirty (130') feet, more or less, on Third Street and extending back therefrom of equal width along Wilson Avenue, one hundred sixty (160) feet, more or less, to land formerly owned by George H. Campbell and land formerly owned by Ebert Long.

Parcel Three: ALL that certain piece, parcel or lot of land situate in the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING on the North by the land formerly of George H. Campbell; on the East by the land formerly of George H. Campbell on the South by Center Alley; and on the West by Wilson Avenue. Said lot having a frontage of four (4) feet on Wilson Avenue and extending back therefrom One hundred twenty (120) feet to the land formerly of George H. Campbell.

BEING designated as Parcel Nos. 14-001-0217.000 and 14-001-0220.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at a point on the eastern line of Wilson Avenue, which point is 45 feet northwardly from the intersection of the eastern line of Wilson Avenue with the northern line of Center Alley; thence northwardly by the eastern line of Wilson Avenue, 45 feet to a stake; thence eastwardly by a line parallel with the northern line of Center Alley and 90 feet distant therefrom 120 feet to a stake; thence by a line parallel with the eastern line of Wilson Avenue, southwardly 45 feet to a stake; thence by a line parallel to the northern line of Center Alley and 45 feet distant therefrom, 120 feet in a westerly direction to the place of beginning.

BEING designated as Parcel No. 14-001-0218.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the General Plan, bounded and described as follows, to wit:

ON the North by land now or formerly of J.B. Wilson; on the East by land now or formerly of George H. Campbell; on the South by Center Alley; and on the West by Wilson Avenue. Said lot having a frontage of 41 feet on Wilson Avenue and extending back therefrom 120 feet to land now or formerly of George H. Campbell.

BEING designated as Parcel No. 14-001-0219.000

Under and subject to easements, rights of way, oil and gas leases, restrictions, reservations, exceptions, agreements and coal and mining rights as set forth in prior instruments of record.

As to Parcel No. 14-001-0216.000: BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife by deed of William G. Fedyski, single dated October 29, 1992 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on October 29, 1992, in Deed Book 1510, page 750.

As to Parcel Nos. 14-001-0217.000 and 14-001-0220.000: BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated August 31, 1992 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on September 1, 1992 in Deed Book Volume 1506, Page 707.

As to Parcel No. 14-001-0218.000: BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife, by deed of George J. Campbell, married, and Mary S. Campbell, unmarried, siblings, dated September 15, 1988 and recorded in the

TSS240-00 COAL

File No. 13-498

Recorder's Office of Beaver County, Pennsylvania, on September 16, 1988 in Deed Book Volume 1349, Page 504.

As to Parcel No. 14-001-0219.000; BEING the same premises conveyed to George J. Campbell and Sheila C. Campbell, his wife, by deed of The M. Louise Koehler Trust, dated November 24, 1993 and recorded in the Recorder's Office of Beaver County, Pennsylvania, on December 2, 1993 in Deed Book Volume 1556, Page 555.

with the appurtenances:    To have and to hold    the same to and for the use of the said Grantees, as tenants by the entirety, their assigns and unto the survivor of them, and the survivor's personal representatives and assigns; and the Grantors, for their heirs, executors, administrators and assigns, hereby covenant and agree that they will

Warrant and Defend Generally

the property hereby conveyed against any and all persons lawfully claiming the same.

NOTICE—THIS DOCUMENT DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGES MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P. L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.)

In Witness Whereof, The said Grantors have hereunto set their hands and seals. Dated the day and year first above written.

Sealed and Delivered
IN THE PRESENCE OF US:

_____                    _____ (SEAL)
Witness                                                    George J. Campbell

_____                    _____ (SEAL)
Witness                                                    Sheila C. Campbell

State of _ARIZONA_            }
County of _MARICOPA_        : ss

On this the    22  day of  JAN.  , 2014, before me, a Notary Public for the above jurisdiction, residing in therein, the undersigned Officer, personally appeared George J. Campbell and Sheila C. Campbell, known to me (satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires: _12-22-2014_

VICKY L. FORBES
Notary Public - Arizona
Maricopa County
My Comm. Expires Dec 22, 2014

T55240-04 COAL

File No. 13-498

**NOTICE** THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, IS FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966, AS AMENDED 1980, OCT. 10, P.L. 874, NO. 156 § 1.

Attest                                    THE INGROS FAMILY LLC

_____          By: _____
          Secretary                                    President

## CERTIFICATE OF RESIDENCE

I do hereby certify that the **Tax Billing Address** of the within named grantee/s is

The Ingros Family LLC
Name or Mortgagee Company

_____
In Care of (if required)

170 Beaver Street
Address

Beaver, PA 15009
City, State and Zip Code

I do hereby certify that the **Owner Mailing Address** of the within named grantee/s is

The Ingros Family LLC
Name

_____
In Care of (if required)

170 Beaver Street
Address

Beaver, PA 15009
City, State and Zip Code

Witness my hand this 31st day of January, 2014



_____
For Grantee

Mail to:
American General Services Corp.
701 Corporation Street; 2nd Floor
Beaver, PA 15009

I hereby CERTIFY that this document is recorded in the Recorder's Office of Beaver County, Pennsylvania

_____

This Document Recorded
02/03/2014
12 15 21 PM
Instrument: DEED

State RTT  $4250.00
Local RTT  $4250.00

Instr # 3465071
Receipt # 7014308165
Rec Fee  $55.00
Beaver County, Recorder of Deeds

TSS248-00 COAL

CERTIFIED TRUE AND
CORRECT COPY OF ORIGINAL

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                  CIVIL DIVISION

          Plaintiff,                              NO.  2020-10702

     v.

THE INGROS FAMILY, LLC a/k/a                      **PRAECIPE TO INDEX LIS
INGROS FAMILY, LLC                                PENDENS**
and RYAN SHARBONNO,

          Defendants.                             Filed on behalf of Plaintiff,
                                                  Enterprise Bank

                                                  Counsel of Record for this Party:

                                                  Lauren P. McKenna, Esquire
                                                  PA Id. No. 59145
                                                  William L. Stang, Esquire
                                                  PA Id. No. 33221

                                                  FOX ROTHSCHILD LLP
                                                  BNY Mellon Center
                                                  500 Grant Street
                                                  Suite 2500
                                                  Pittsburgh, PA  15219
                                                  Telephone: (412) 391-1334
                                                  Facsimile: (412) 391-6984
                                                  lmckenna@foxrothschild.com
                                                  wstang@foxrothschild.com

FILED OR ISSUED
2020 AUG 24  AM 7: 54
MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

FILED OR ISSUED
2020 JUL 31  PM 3: 13
MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

**EXHIBIT**
tabbies
B

CERTIFIED TRUE AND
CORRECT COPY OF ORIGINAL

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

      Plaintiff,                                NO. 2020-10702

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

      Defendants.

## PRAECIPE TO INDEX LIS PENDENS

TO THE PROTHONOTARY:

Please enter the above action as a *lis pendens* against The Ingros Family, LLC and Jeffrey S.

Ingros and the premises known as 295 Third Street, Beaver, PA (also identified elsewhere as 260 Wilson

Avenue, Beaver, PA) of Beaver County.  The premises are designated by The Recorder of Deeds of

Beaver County as Parcel Nos. 14-001-0216.000, 14-001-0217.000, 14-001-220.000, 14-001-0218.000

and 14-001-0219.000; all as described in the Legal Description attached as Exhibit A hereto.  The

undersigned certifies that this Lis Pendens involves title to the real estate located at 295 Third Street,

Beaver, PA.

*I, Michael Rossi, Prothonotary of the
Court of Common Pleas of Beaver County,
do certify that this is a true and correct
copy of the original record.*

Date 7/31/2020

By:

LAUREN P. MCKENNA, ESQUIRE
WILLIAM L. STANG, ESQUIRE
FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
(412) 391-1334

Attorneys for Plaintiff,
ENTERPRISE BANK

Dated:    July 31 2020

ALL THAT CERTAIN piece, parcel or tract of land located in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlet No. 13 in the general Plan of Outlots for said Borough bounded and more fully described as follows:

BEGINNING at a point on the South side of Third Street, said point being located a distance of 130 feet East of the East line of Wilson Avenue (as measured along said South side of Third Street); thence extending eastwardly along the South side of said Third Street, a distance of 65 feet to a post; thence southwardly by line of land now or formerly of J.R. Leonard, a distance of 160 feet to a post; thence westwardly along the line of land of Emma C.D. Campbell (formerly of J.B. Wilson) a distance of 65 feet to a post; thence northwardly by line of land of Emma C.D. Campbell (formerly of J.B. Wilson) 160 feet to a point at the place of beginning..

BEING designated as Parcel No. 14-001-0216.000

Parcel One: ALL that certain piece, parcel or lot of land lying and being situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Out Lot No. 13 in the General Plan of Out Lots for the said Borough of Beaver, bounded and described as follows, to wit:

BEGINNING at a point on the North side of Center Alley 120 feet East of Wilson Avenue; thence northwardly and parallel with Wilson Avenue and along the line of lands formerly of Emma C.D. Campbell and lands now or formerly of Flora D. Kerr, 90 feet to lands now or formerly of John B. Wilson; thence eastwardly and parallel with Center Alley and Third Street along the line of lands now or formerly of said John B. Wilson, 75 feet to the line of lands now or formerly of J.R. Leonard; 90 feet to Center Alley; thence westwardly and parallel and along Center Alley, 75 feet to the place of beginning. Having a frontage of 75 feet on Center Alley, and extending back therefrom of equal width, 90 feet to lands now or formerly of John B. Wilson aforesaid,

Parcel Two: ALL that certain parcel or lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania being part of Out Lot No. 13 in the General Plan of Outlots of the Borough of Beaver, bounded and described as follows, to wit:

ON the North by Third Street; on the East by lot formerly owned by Laura Smith; on the South by land formerly owned by George H. Campbell, and land formerly owned by Ebert Long; and on the West by Wilson Avenue, the said lot being situate at the Southeast corner of Third Street and Wilson Avenue, and having a frontage of One hundred thirty (130) feet, more or less, on Third Street and extending back therefrom of equal width along Wilson Avenue, one hundred sixty (160) feet, more or less, to land formerly owned by George H. Campbell and land formerly owned by Ebert Long.

Parcel Three: ALL that certain piece, parcel or lot of land situate in the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING on the North by the land formerly of George H. Campbell; on the East by the land



**EXHIBIT**

A

formerly of George H. Campbell on the South by Center Alley, and on the West by Wilson Avenue. Said lot having a frontage of four (4) feet on Wilson Avenue and extending back therefrom One hundred twenty (120) feet to the land formerly of George H. Campbell.

BEING designated as Parcel Nos. 14-001-0217.000 and 14-001-0220.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at a point on the eastern line of Wilson Avenue, which point is 45 feet northwardly from the intersection of the eastern line of Wilson Avenue with the northern line of Center Alley; thence northwardly by the eastern line of Wilson Avenue, 45 feet to a stake; thence eastwardly by a line parallel with the norther line of Center Alley and 90 feet distant therefrom 120 feet to a stake; thence by a line parallel with the eastern line of Wilson Avenue, southwardly 45 feet to a stake; thence by a line parallel to the northern line of Center Alley and 45 feet distant therefrom, 120 feet in a westerly direction to the place of beginning.

BEING designated as Parcel No. 14-001-0218.000

ALL that certain lot of land situate in the First Ward of the Borough of Beaver, County of Beaver and Commonwealth of Pennsylvania, being part of Outlot No. 13 in the General Plan, bounded and described as follows, to wit:

ON the North by land now or formerly of J.B. Wilson; on the East by land now or formerly of George H. Campbell; on the South by Center Alley; and on the West by Wilson Avenue. Said lot having a frontage of 41 feet on Wilson Avenue and extending back therefrom 120 feet to land now or formerly of George H. Campbell.

BEING designated as Parcel No. 14-001-0219.000

Under and subject to easements, rights of way, oil and gas leases, restrictions, reservations, exceptions, agreements and coal and mining rights as set forth in prior instruments of record.

As to Parcel No. 14-001-216.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in Deed Book 1510, page 750.

As to Parcel Nos. 14-001-0217.000 and 14-001-0220.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in Deed Book 1500, page 707.

As to Parcel No. 14-001-0218.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in

Deed Book 1349, page 504.

As to Parcel No. 14-001-0219.000: BEING the same premises conveyed to The Ingros Family, LLC, by deed of George J. Campbell and Sheila C. Campbell, his wife, dated January 22, 2014 and recorded in the Recorder's Office of Beaver County, Pennsylvania on February 3, 2014, in Deed Book 1556, page 555.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature:

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

FILED OR ISSUED

2020 AUG -4 AM 7: 54

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

2020 JUL 31 PM 3: 12

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

FILED OR ISSU

Rev. 09/2017

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2020, a true and correct copy of the

foregoing Praecipe to Index Lis Pendens was served upon the following via email and U.S. mail,

first class, postage prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA 15106

FOX ROTHSCHILD LLP

By: _William L. Stang_
William L. Stang, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that on this _____4_____ day of _____August_____, 2020, a true

and correct copy of the foregoing Notice of Lis Pendens was served upon the following via email

and U.S. mail, first class, postage prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA  15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA  15106

FOX ROTHSCHILD LLP

By: _____
William L. Stang, Esquire

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature: _____

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

FILED OR ISSUED

2020 AUG -4  AM 7: 54

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

Rev. 09/2017

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

        Plaintiff,

        v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

        Defendants.

CIVIL DIVISION

NO. 2020-10702

**ACCEPTANCE OF SERVICE
OF COMPLAINT**

Filed on behalf of Plaintiff,
Enterprise Bank

Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA 15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com





Active\112924353.v1-8/24/20

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

     Plaintiff,                                    NO. 2020-10702

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

     Defendants.

## ACCEPTANCE OF SERVICE OF COMPLAINT

    I, John Linkosky, Esquire on behalf of John Linkosky & Associates, as counsel

for Defendant, Ryan Sharbonno, in this matter, accept service of the Complaint filed on

behalf of Plaintiff, Enterprise Bank, and certify that I am authorized to do so.

Date: _8/14/20_          By: _____
                       John Linkosky, Esquire
                       John Linkosky & Associates
                       Attorneys at Law
                       715 Washington Avenue
                       Carnegie, PA 15106

BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI
2020 AUG 27  PH 12:00
FILED OR ISSUED

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature:

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI

2020 AUG 27  PM12:00

FILED OR ISSUED

Rev. 09/2017

## CERTIFICATE OF SERVICE

I hereby certify that on this _24_ day of August, 2020, a true and correct

copy of the foregoing Acceptance of Service of Complaint was served upon the

following via email and U.S. mail, first class, postage prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA  15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA  15106

FOX ROTHSCHILD LLP

By: _William L. Stang_
William L. Stang, Esquire

BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI
2020 AUG 27 PM 12: 00
FILED OR ISSUED

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

Plaintiff,

v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

Defendants.

CIVIL DIVISION

NO.  2020-10702

**ACCEPTANCE OF SERVICE
OF COMPLAINT**

Filed on behalf of Plaintiff,
Enterprise Bank

·Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA  15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com



BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI
2020 AUG 27  A  11: 35
FILED OR ISSUED

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

        Plaintiff,                                   NO.  2020-10702

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

        Defendants.

## ACCEPTANCE OF SERVICE OF COMPLAINT

I, Ryan J. Cooney, Esquire on behalf of Robert O. Lampl Law Office, as counsel

for Defendant, The Ingros Family, LLC a/k/a Ingros Family, LLC, in this matter, accept

service of the Complaint filed on behalf of Plaintiff, Enterprise Bank, and certify that I am

authorized to do so.

Date: 8 | 10 | 2020    By: _____
                    Ryan J. Cooney, Esquire
                    Robert O. Lampl Law Office
                    Benedum Trees Building
                    223 Fourth Avenue, 4th Floor
                    Pittsburgh, PA  15222

BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI
2020 AUG 27  A 11: 36
FILED OR ISSUED

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature: _____

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

2020 AUG 27 A 11:35
MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA
FILED OR ISSUED

Rev. 09/2017

## CERTIFICATE OF SERVICE

I hereby certify that on this _____24_____ day of August,  2020, a true and correct

copy of the foregoing Acceptance of Service of Complaint was served upon the

following via email and U.S. mail, first class, postage prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA  15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA  15106

FOX ROTHSCHILD LLP

By: _____
William L. Stang, Esquire

# IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

| | |
|---|---|
| **ENTERPRISE BANK,** | **CIVIL ACTION-LAW** |
| Plaintiff, | |
| v. | **No. 10702-2020** |
| **THE INGROS FAMILY, LLC a/k/a** | **SUGGESTION OF BANKRUPTCY** |
| **INGROS FAMILY, LLC** | |
| **and RYAN SHARBONNO,** | |
| | **Filed on Behalf of Defendant,** |
| Defendants. | **The Ingros Family, LLC** |

Counsel of Record for this Party:

ROBERT O LAMPL
PA I.D. #19809

JAMES R. COONEY
PA I.D. #32706

RYAN J. COONEY
PA I.D. #319213

SY O. LAMPL
PA I.D. #324741

Benedum Trees Building
223 Fourth Avenue
Fourth Floor
Pittsburgh, PA  15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)

M7

FILED OR ISSUED.

2020 SEP 11  AM 11:30

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

9/4/2020                     Pawb LIVE Database Area G6 CM/ECF-BK V4.2.0

United States Bankruptcy Court
WESTERN DISTRICT OF PENNSYLVANIA

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 11 of the United States Bankruptcy Code,
entered on 09/04/2020 at 3:22 PM and filed on 09/04/2020.



**The Ingros Family LLC**
295 Third Street
Suite 300
Beaver, PA 15009
Tax ID / EIN: 46-4432003

The case was filed by the debtor's attorney:

**Robert O Lampl**
Robert O Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222
412-392-0330

The case was assigned case number 20-22606.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page https://ecf.pawb.uscourts.gov or at the Clerk's Office, U.S. Bankruptcy Court, 5414 U.S. Steel
Tower, 600 Grant Street, Pittsburgh, PA 15219.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Michael R. Rhodes**
Clerk, U.S. Bankruptcy Court

| PACER Service Center |
|:---:|
| Transaction Receipt |
| 09/04/2020 15:31:47 |

## CERTIFICATE OF SERVICE

I, Ryan J. Cooney, hereby certify that on the 9th day of September, 2020, I served a true and correct copy of the within **SUGGESTION OF BANKRUPTCY** upon the following counsel by E-mail:

John Linkosky
715 Washington Avenue
Carnegie, PA 15106
*linklaw@comcast.net*

Lauren P. McKenna
William L. Stang
FOX ROTHSCHILD LLP
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
lmckenna@foxrothschild.com
wstang@foxrothschild.com

Ryan J. Cooney

2

# IN THE COURT OF COMMON PLEAS
## OF THE BEAVER COUNTY, PENNSYLVANIA

**ENTERPRISE BANK,**

      **Plaintiff,**

**Vs.**

**THE INGROS FAMILY, LLC,**
**a/k/a INGROS FAMILY LLC AND**
**RYAN SHARBONNO,**

      **Defendants.**

**CIVIL DIVISION**

NO. /0702- 2020

**PRELIMINARY**
**OBJECTIONS**

**Filed on Behalf of**
**Defendant, Ryan Sharbonno**

**Counsel of Record**
**For this Party:**

**John Linkosky, Esq.**
**715 Washington Avenue**
**Carnegie, PA  15106**

**(412) 278-1280**

<u>linklaw@comcast.net</u>

**PA I.D. No. 46436**



BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI

2020 SEP 15 PM 4: 16

FILED OR ISSUED:

## IN THE COURT OF COMMON PLEAS
## OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,        :     CIVIL DIVISION

        Plaintiff,    :     NO. *10702-2020*

Vs.                  :

THE INGROS FAMILY, LLC   :
a/k/a INGROS FAMILY, LLC   :
AND RYAN SHARBONNO,    :

        Defendants.   :

*Stamp: FILED OR ISSUED — 2020 SEP 15 PH 4:16 — MICHAEL ROSSI PROTHONOTARY BEAVER COUNTY, PA*

## PRELIMINARY OBJECTIONS

**AND NOW COMES** Defendant, Ryan Sharbonno, by and through his attorney, John Linkosky, Esquire and files these Preliminary Objections only to the portions of the within action that relate to this Defendant and not to any allegations that relate to any other Defendant, as the Complaint against the Defendant, The Ingros Family, LLC, is subject to an automatic stay as the result of a bankruptcy filing, and it is not Sharbonno's intention to violate the automatic stay provisions of the United States Bankruptcy Code, but only to protect his rights against Enterprise Bank:

1. Plaintiff, Enterprise Bank (hereinafter "Enterprise") has filed a four (4) Count Complaint, seeking to have its Mortgage reformed and given priority over the Judgments filed on behalf of Sharbonno.

2. According to the Complaint, Enterprise admits that the record title holder for the property located at 295 Third Street, Beaver, PA (also identified elsewhere as 260 Wilson Avenue, Beaver, PA) (hereinafter "Property") is "The Ingros Family, LLC" (Complaint, paragraph 5, Exhibit A).

3. Enterprise admits that on September 14, 2018, a Mortgage which identified the borrower as "Ingros Family, LLC" was signed and recorded as a purported encumbrance on the Property.(Complaint)

4. The Bank admits that its Mortgage omits a portion of the name of the record title holder, namely the word "The" before "Ingros Family, LLC" (Complaint, paragraphs 11, 12).

5. Enterprise contends that the loan it made was used to satisfy a First National Bank Mortgage on the Property in the name of "The Ingros Family, LLC" (Complaint, paragraphs 6, 13, Exhibit F).

6. The Bank admits that after it closed on the loan, it became aware of the existence of a Judgment in the amount of $60,000, recorded May 3, 2018, in favor of Sharbonno (Complaint, paragraph 16, Exhibit G) and that it learned Sharbonno obtained a second Confessed Judgment in the amount of $460,000, on November 20, 2018 (Complaint, paragraph 17, Exhibit G).

7. Both Sharbonno Judgments were indexed against the actual record owner of the Property, "The Ingros Family, LLC" (Complaint, paragraphs 16, 17, Exhibit G).

8. Enterprise now seeks to reform its incorrectly titled and filed Mortgage so that it is a valid lien on the property with priority over Sharbonno's correctly filed and indexed Judgments.

9. At Count I of its Complaint, Enterprise seeks a Declaratory Judgment that its Mortgage is a valid first lien on the premises, which is senior to and has priority over Sharbonno's properly filed and indexed Judgments and seeks a declaration that its Mortgage is a valid lien on the premises, despite the misidentification of the borrower in the Mortgage (Complaint, paragraphs 24, 25).

10. In support of its request for Declaratory Judgment, Enterprise, at Count II, seeks to have its Mortgage reformed on the basis of unilateral mistake.

11. At Count III, the Bank seeks an equitable lien and consequently an equitable Mortgage on the premises so as to place it in first lien position, ahead of the validly filed and indexed Sharbonno Judgments.

12. Finally, at Count IV of its Complaint, Enterprise seeks priority over the Sharbonno Judgments on a theory of equitable subrogation.

13. Each and every form of relief sought by Enterprise from the effect of its improperly written, filed and indexed Mortgage, which, on its face, cannot provide innocent third parties, such as Sharbonno, with notice of the filing and indexing of the Mortgage, adversely impacts the lien of such innocent third parties, namely Sharbonno.

14. Each of the Counts of the Enterprise Complaint rely on the Court exercising its equitable powers in favor of Enterprise and contrary to Sharbonno, at least in terms of the requests by Enterprise for its Mortgage to have priority over Sharbonno's Judgments at a Sheriff's Sale.

15. Enterprise has failed to state a claim upon which relief can be granted, in equity, against Sharbonno insofar as the Complaint relates to the Enterprise Mortgage having priority over the Sharbonno Judgments.

16. Enterprise has failed to state a claim upon which relief can be granted in connection with its request to have its Mortgage reformed so as to provide it with a priority lien position over the Sharbonno Judgments.

17. Enterprise has failed to state a claim upon which relief can be granted against Sharbonno, in regard to its request for an equitable lien or Mortgage on the property, in a first lien position, as a result of the First National Bank Mortgage having been satisfied with the proceeds of the Enterprise loan.

18. Enterprise has failed to state a claim upon which relief can be granted for equitable subrogation which would give its loan priority over the Sharbonno Judgments.

19. Enterprise, in its Complaint, has failed to state a claim upon which relief can be granted to have its Mortgage given priority over the properly filed and indexed Sharbonno Judgments, when its Mortgage, admittedly, was not written in the name of the owner of the property, was not filed in the name of the property owner and was not indexed in the name of the property owner.

20. Enterprise, in the Complaint, admits that it knew the true name of the owner of the property and that the identity of the property owner was readily available to it at the time it made its loan. (Complaint Exhibit D, Exhibit A)

WHEREFORE, Defendant Ryan Sharbonno respectfully requests this Honorable Court to dismiss the claims of Enterprise Bank against him for failure to state a claim upon which relief can be granted insofar as they assert a right of Declaratory Judgment, reformation, equitable lien or equitable subrogation so as to give the Enterprise Mortgage priority over the Sharbonno Judgments and to Order such other relief as this Court deems just and proper.

Respectfully submitted,

John Linkosky, Esquire
Attorney for Defendant
Ryan Sharbonno

PA I.D. No. 46436

715 Washington Avenue
Carnegie, PA 15106

linklaw@comcast.net

(412) 278-1280

## IN THE COURT OF COMMON PLEAS
## OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                      :        **CIVIL DIVISION**
                                      :
        **Plaintiff,**       :        NO. *10702 - 2020*
                                      :
Vs.                                   :
                                      :
THE INGROS FAMILY, LLC                :
a/k/a INGROS FAMILY, LLC              :
AND RYAN SHARBONNO,                   :
                                      :
        **Defendants.**      :


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Preliminary Objections has been served by first class mail, postage prepaid, to the below-named party on the date herein below set forth.

       William L. Stang, Esquire
       Fox Rothschild, LLP
       BNY Mellon Center
       500 Grant Street, Suite 2500
       Pittsburgh, PA  15219

       James R. Cooney, Esquire
       Law Offices of Robert O. Lampl
       223 Fourth Avenue
       4th Floor
       Pittsburgh, PA  15222


Date:  September *15*, 2020

                 John Linkosky, Esquire
                 Attorney for Defendant
                 Ryan Sharbonno

BEAVER COUNTY, PA
PROT:HONOTARY
MICHAEL ROSSI
2020 SEP 15 PH 4: 16
FILED OR ISSUED

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: John Linkosky, Esquire

Signature:

Name: John Linkosky

Attorney No.: (If Applicable):   46436

BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI
2020 SEP 15 PM 4: 16
FILED OR ISSUED

Court Administrator's Office
Court of Common Pleas
Beaver County Courthouse
Beaver, Pennsylvania 15009
(724) 770-4662

NOTICE
INITIAL CASE MANAGEMENT CONFERENCE

IN RE: Enterprise Bank vs. The Ingros Family LLC, Ryan Sharbonno

NO. 10702-2020

An Initial Case Management Conference will be conducted on **Monday, October 19, 2020 at 11:15 a.m. in Courtroom No. 6** or the Chambers thereof before the **Honorable James J Ross**. The parties are advised that pursuant to Beaver County L.R. No. 301(4) a Civil Case Summary, substantially in accordance with Form 301A, must be filed with the Prothonotary with copies provided to the Court and opposing parties or counsel no less than seven (7) days prior to the scheduled Conference.

Dated: 9-17-2020

Copies to :  William Stang
John Linkosky
The Ingros Family LLC



BEAVER COUNTY, PA
PROTHONOTARY
MICHAEL ROSSI

2020 SEP 17 AM 11: 20

FILED OR ISSUED

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

     Plaintiff,

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

     Defendants.

CIVIL DIVISION

NO. 2020-10702

**LR 301 CIVIL CASE SUMMARY**

Filed on behalf of Plaintiff,
Enterprise Bank

Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA 15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com



IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

        Plaintiff,                                NO.  2020-10702

       v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

        Defendants.

## LR 301 CIVIL CASE SUMMARY

### NATURE OF THE CASE

**1.     Please set forth the general nature of the case:**

By deed dated January 22, 2014, The Ingros Family LLC acquired property

known as 295 Third Street, Beaver, PA ("Premises") (also identified elsewhere as 260

Wilson Avenue, Beaver, PA), from George J. and Sheila C. Campbell.  The deed was

recorded with the Recorder of Deeds of Beaver County ("Recorder of Deeds") on

February 3, 2014.

On October 27, 2014, The Ingros Family LLC made an open-end construction

mortgage to First National Bank of Pennsylvania in the amount of $2,680,000 (First

National Bank Mortgage").  The mortgage was recorded with the Recorder of Deeds on

October 30, 2014.

During September 2018, the same borrower, The Ingros Family LLC, applied to

Plaintiff, Enterprise Bank ("Enterprise"), to refinance the First National Bank Mortgage.

Enterprise was willing to provide a refinance loan to The Ingros Family LLC., provided

that the repayment of the loan was secured by a first mortgage lien on the Premises.

On September 14, 2018, Enterprise loaned the sum of $3,179,000 to The Ingros

Family LLC. To secure repayment of the loan, on September 14, 2018, The Ingros

Family executed a mortgage in favor of Enterprise in the sum of $3,179,000 ("Enterprise

Mortgage"). This mortgage was recorded on September 19, 2018 with the Recorder of

Deeds. However, unlike the First National Bank Mortgage, the Enterprise Mortgage

identified the borrower as Ingros Family LLC (without the "The" before the family name

on the mortgage).

The Recorder of Deed's receipt specifically identifies the mortgagor as Ingros

Family LLC (without the "The" before the family name), consistent with the identification

of the borrower in the body of the Enterprise Mortgage. It is not clear whether the

Enterprise Mortgage was indexed in the name index under "T" (The Ingros Family LLC)

or "I" (Ingros Family LLC). However, it is clear that the refinance proceeds provided by

Enterprise were used to satisfy the First National Bank Mortgage, resulting in a payoff of

the First National Bank Mortgage in the amount of $2,642,766.33.

It was the intention of Enterprise and The Ingros Family LLC that the Enterprise

Mortgage would constitute a valid, first lien on the Premises. It was also the intention of

Enterprise and The Ingros Family LLC that the borrower would be properly identified in

the Enterprise Mortgage in order to constitute a valid, first lien on the Premises, and that

any discrepancy in the identification of the borrower without the "The" in the name of the

borrower would have no impact on the validity or priority of the Enterprise Mortgage.

Following the Enterprise refinance transaction, Enterprise learned of the

existence of a prior judgment on the Premises entered in favor of Defendant Ryan

Sharbonno ("Sharbonno") in the amount of $60,000 and recorded on May 3, 2018 ("First

3

Sharbonno Judgment"). Enterprise has also learned that on November 20, 2018, after the recording of the Enterprise Mortgage, Sharbonno obtained a second judgment by confession in the amount of $460,000 in the matter of *Sharbonno v. The Ingros Family LLC*; CCP Beaver, Civil Action No. 2018-33331 ("Second Sharbonno Judgment"). The judgment search on the Premises shows that this judgment was indexed against "The Ingros Family LLC" and Jeffrey Ingros.

Because of the discrepancy in the manner in which the borrower's name is identified in the Enterprise Mortgage and the later entered Second Sharbonno Judgment, a question has arisen as to whether the Enterprise Mortgage has priority over the later entered second Sharbonno Judgment. Enterprise believes that the Enterprise Mortgage should be deemed to have priority over the Second Sharbonno Judgment. Enterprise also believes that the Enterprise Mortgage should be deemed to have priority over the first Sharbonno judgment, which although entered prior to the Enterprise Mortgage, should be deemed subordinate based upon the doctrine of equitable subrogation.

Given the above circumstances, Enterprise has filed a Complaint requesting entry of a declaratory judgment (Count I), reformation of the Enterprise Mortgage (Count II), the grant of an equitable mortgage on the premises in a first lien position (Count III) and a declaration that the first Sharbonno judgment and second Sharbonno judgment are subordinate to the lien of the Enterprise Mortgage via the doctrine of equitable subrogation (Count IV).

4

Active\114983604.v1-10/9/20

## PENDING/ANTICIPATED PRELIMINARY OBJECTIONS/MOTIONS
## FOR JUDGMENT ON THE PLEADINGS

**2.**     **Are there any pending or anticipated preliminary objections or motions for judgment on the pleadings in this case?**

Yes.

If yes, please provide more detail:

(a) On September 4, 2020, The Ingros Family, LLC aka Ingros Family, LLC filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code at Case No. 20-22606 (CMB).  The rights of Enterprise and all defendants in the present case are inextricably intertwined such that the Court of Common Pleas of Beaver County cannot grant relief to Enterprise or defendant Sharbonno without substantially affecting the rights of the Ingros Family, LLC aka Ingros Family, LLC.  As a result, it is submitted that the Court of Common Pleas of Beaver County is without jurisdiction or authority to proceed further in this matter.  A Motion to Stay Proceedings will be presented at the Initial Case Management Conference.

(b) Defendant, Ryan Sharbonno, has filed and served Preliminary Objections alleging that Plaintiff has failed to state a claim upon which relief can be granted as to each count contained in Plaintiff's Complaint.  Defendant Sharbonno has not yet served a Brief in Support of his Preliminary Objections.

## SUGGESTED DATES

**3.**     **Set forth suggested dates for the following:**

Given the fact that the Ingros Family, LLC filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on September 4, 2020, it is submitted

5

that the Court of Common Pleas has no jurisdiction or authority to proceed further in this

matter.  To the extent that the court believes otherwise, Plaintiff suggests the following:

Date by which fact discovery should be completed: February 26, 2021

Date by which expert reports should be exchanged: April 30, 2021

Dates by which dispositive motions should be filed/June 21, 2021 and

responses/July 19, 2021

Dates proposed for pre-trial conference: At the convenience of the court

subsequent to its ruling on any dispositive motions.

### WRIT OF SUMMONS/MDJ APPEAL

**4.     Is this a case which has either been initiated by a Writ of Summons or is an
appeal of a civil judgment from the Magisterial District Courts and a complaint
has not yet been filed?**

No.

If so, does the Plaintiff anticipate filing a complaint within 90 days of the case

management conference?  Not Applicable.

### ADR

**5.     Are you interested in attempting to resolve this case by a method of
alternative dispute resolution?**

No.

If yes, select one or more of the following:

Mediation, Arbitration, Binding 6-Member Jury Panel.  Not Applicable.

6

_(signature)_

LAUREN P. MCKENNA, ESQUIRE
WILLIAM L. STANG, ESQUIRE
FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
(412) 391-1334

Attorneys for Plaintiff,
ENTERPRISE BANK

FILED OR ISSUED

2020 OCT 13 AM 11: 12

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

7

## CERTIFICATE OF SERVICE

I hereby certify that on this _____9_____ day of October, 2020, a true and correct

copy of the foregoing LR 301 Civil Case Summary was served upon the following via

email and U.S. mail, first class, postage prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA 15106

2020 OCT 13  AM II: 12

MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA

FILED OR ISSUED

FOX ROTHSCHILD LLP

By: _____
        William L. Stang, Esquire

8

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,

        Plaintiff,

    v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

        Defendants.

CIVIL DIVISION

NO.  2020-10702

**PLAINTIFF'S RESPONSE TO
PRELIMINARY OBJECTIONS
OF DEFENDANT, RYAN
SHARBONNO**

Filed on behalf of Plaintiff,
Enterprise Bank

Counsel of Record for this Party:

Lauren P. McKenna, Esquire
PA Id. No. 59145
William L. Stang, Esquire
PA Id. No. 33221

FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street
Suite 2500
Pittsburgh, PA  15219
Telephone: (412) 391-1334
Facsimile: (412) 391-6984
lmckenna@foxrothschild.com
wstang@foxrothschild.com

FILED OR ISSUED
2020 OCT 14  AM 11: 46
MICHAEL ROSSI
PROTHONOTARY
BEAVER COUNTY, PA



IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

ENTERPRISE BANK,                                    CIVIL DIVISION

          Plaintiff,                               NO.  2020-10702

     v.

THE INGROS FAMILY, LLC a/k/a
INGROS FAMILY, LLC
and RYAN SHARBONNO,

          Defendants.

### PLAINTIFF'S RESPONSE TO PRELIMINARY OBJECTIONS OF
### DEFENDANT, RYAN SHARBONNO

          Plaintiff, Enterprise Bank, by and through its attorneys, Fox Rothschild LLP, files

its Response to the Preliminary Objections of Defendant, Ryan Sharbonno

("Sharbonno"), as follows:

          1.    The allegations of paragraph 1 are an attempt to paraphrase and interpret

the terms of a written document and therefore constitute conclusions of law to which no

response is required.  By way of further response, it is averred that on or about

September 4, 2020 the Defendant identified herein as The Ingros Family, LLC a/k/a

Ingros Family, LLC filed for bankruptcy protection under Chapter 11 of the United States

Bankruptcy Code at Case No. 20-22606 (CMB) in the United States Bankruptcy Court

for the Western District of Pennsylvania.  It is further averred that the rights of Plaintiff

and Defendants, as referenced throughout Plaintiff's Complaint are inextricably

intertwined such that the Court of Common Pleas of Beaver County cannot grant relief

to Plaintiff or Defendant Sharbonno without substantially affecting the rights of

Defendant The Ingros Family, LLC a/k/a Ingros Family, LLC.  As a result, it is submitted

that the Court of Common Pleas of Beaver County is without jurisdiction or authority to proceed further in this matter.

    2.    The allegations of paragraph 2 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required. By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

    3.    The allegations of paragraph 3 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required. By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

    4.    The allegations of paragraph 4 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required. By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

    5.    The allegations of paragraph 5 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required. By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

    6.    The allegations of paragraph 6 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required. By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

2

7.      The allegations of paragraph 7 constitute conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

8.      The allegations of paragraph 8 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

9.      The allegations of paragraph 9 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

10.     The allegations of paragraph 10 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

11.     The allegations of paragraph 11 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

12.     The allegations of paragraph 12 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

3

13.    The allegations of paragraph 13 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

14.    The allegations of paragraph 14 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

15.    The allegations of paragraph 15 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

16.    The allegations of paragraph 16 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

17.    The allegations of paragraph 17 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

18.    The allegations of paragraph 18 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

19.    The allegations of paragraph 19 are conclusions of law to which no response is required.  By way of further response, Plaintiff incorporates herein by reference its response at paragraph 1 above.

20.    The allegations of paragraph 20 are an attempt to paraphrase and interpret the terms of a written document and therefore constitute conclusions of law to

4

which no response is required. By way of further response, Plaintiff incorporates herein

by reference its response at paragraph 1 above.

WHEREFORE, Plaintiff, Enterprise Bank, respectfully requests that this Court

dismiss Defendant, Ryan Sharbonno's Preliminary Objections and enter an Order

granting such other relief as the Court deems just and proper.

Respectfully submitted,

FOX ROTHSCHILD LLP

By: _____
        William L. Stang, Esquire
        Lauren P. McKenna, Esquire

        BNY Mellon Center
        500 Grant Street
        Suite 2500
        Pittsburgh, PA  15219

5

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Fox Rothschild LLP

Signature: _____

Name: William L. Stang, Esquire

Attorney No. (if applicable): 33221

Rev. 09/2017

## CERTIFICATE OF SERVICE

I hereby certify that on this ___13___ day of October, 2020, a true and correct

copy of the foregoing Plaintiff's Response to Preliminary Objections of Defendant, Ryan

Sharbonno was served upon the following via email and U.S. mail, first class, postage

prepaid as follows:

Ryan J. Cooney, Esquire
Robert O. Lampl Law Office
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222

John Linkosky, Esquire
John Linkosky & Associates
Attorneys at Law
715 Washington Avenue
Carnegie, PA 15106

FOX ROTHSCHILD LLP

By: _____
William L. Stang, Esquire