IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 20-22606-CMB |
| The Ingros Family LLC, | Chapter 11 |
| Debtor. | |
| Enterprise Bank, | Adversary No. 20-02165-CMB |
| Plaintiff, | |
| v. | Related to Doc. No. 1 |
| The Ingros Family LLC a/k/a Ingros Family LLC and Ryan Sharbonno, | |
| Defendants. | |

*Appearances:*  Joseph P. Fidler and William L. Stang for Plaintiff Enterprise Bank
Thomas E. Reilly for Defendant Ryan D. Sharbonno
Ryan Cooney for Defendant/Debtor The Ingros Family LLC

**MEMORANDUM OPINION**

The matter before the Court is a request to dismiss the *Complaint* of Plaintiff Enterprise Bank ("Enterprise") filed in the form of *Preliminary Objections* by Defendant Ryan Sharbonno ("Sharbonno") prior to the removal of the action from the Court of Common Pleas of Beaver County to this Court.[1] Since the removal, the parties have treated the *Preliminary Objections* (hereinafter, "Motion to Dismiss") as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),

---

[1] The *Complaint*, *Preliminary Objections*, and *Plaintiff's Response to Preliminary Objections of Defendant, Ryan Sharbonno* are attached to the *Notice of Removal* in the above-captioned adversary proceeding. *See* Exhibit B to Doc. No. 1 at 3-62, 100-04, 116-21.

1

made applicable by Fed. R. Bankr. P. 7012.[2] Sharbonno argues that the Complaint should be dismissed for failure to state a claim upon which relief can be granted. Upon consideration of the Complaint, Motion to Dismiss, the responses thereto, the parties' briefs, the arguments presented, and for the reasons set forth herein, this Court finds that the pending Motion to Dismiss must be granted in part and denied in part.[3]

## Background and Procedural History

On October 15, 2020, The Ingros Family LLC (hereinafter "Debtor") commenced the above-captioned adversary proceeding by filing a *Notice of Removal* (Doc. No. 1), thereby removing the action from the Court of Common Pleas of Beaver County to this Court. The underlying action was filed by Enterprise against the Debtor and Sharbonno to determine the validity and priority of Enterprise's lien on the Debtor's building located at 295 Third Street, Beaver, PA 15009 (the "Property"). Sharbonno holds two judgment liens against the Property. The dispute arises out of a mortgage refinance transaction, whereby the mortgagee, Enterprise, identified the mortgagor as "Ingros Family, LLC," without the "The" before the name on the mortgage (the "Enterprise Mortgage"). Oral argument ("Oral Argument") was held on March 22, 2022, at which point the Court took this matter under advisement.

It is important to note that the Complaint originally set forth four counts: Count I – Declaratory Judgment; Count II – Reformation; Count III – Equitable Lien; and Count IV – Equitable Subrogation. However, as provided on the record during Oral Argument, Enterprise represented it is waiving its argument that the Enterprise Mortgage has priority over Sharbonno's

---

[2] Preliminary objections are used in Pennsylvania state court to, among other things, test the legal sufficiency of a pleading. Pa.R.Civ.P. 1028. They are not utilized in federal court.
[3] Pursuant to 28 U.S.C. §§ 157 and 1334, this Court has subject matter jurisdiction. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(K). Further, the parties consent to the entry of final orders or judgments by this Court. *See* Doc. No. 1 at ¶ 7; Doc. No. 5; Doc. No. 6.

first judgment in the amount of $60,000 that was recorded on May 3, 2018 ("First Sharbonno Judgment").[4] Therefore, the Court construes this concession to eliminate the need for consideration of Count IV in its entirety. Further, as the only mention of priority in Count III mirrors the argument presented in Count IV, the Court considers that argument eliminated as well. *See* Complaint, ¶ 34. Finally, with respect to Count I, it is clear that Enterprise no longer seeks a determination of priority above the First Sharbonno Judgment.

### **Standard**

When deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must determine if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the well-pleaded facts are separated from legal conclusions to determine if the alleged facts demonstrate an entitlement to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

For the purpose of deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension*

---

[4]     *See* Audio Recording of Hearing Held in Courtroom B, March 22, 2022, at 2:03:09 P.M.

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court applies the above standards in reviewing the Complaint. Accordingly, the Court makes no findings of fact herein.

**Factual Allegations**

For purposes of resolving the Motion to Dismiss only, the Court accepts as true the factual allegations as set forth in the Complaint. By deed dated January 22, 2014, George J. Campbell and Sheila C. Campbell conveyed the Property to the Debtor as "The Ingros Family LLC." *See* Complaint, ¶ 5 and Exhibit A to Complaint. The deed was recorded on February 3, 2014, with the Recorder of Deeds of Beaver County ("Recorder of Deeds") at instrument number 3465071. *Id*. On October 27, 2014, Debtor executed an open-end construction mortgage in favor of First National Bank of Pennsylvania in the amount of $2,680,000 ("First National Bank Mortgage"), which was recorded on October 30, 2014, with the Recorder of Deeds at instrument number 3491334. *See* Complaint, ¶ 6. The First National Bank Mortgage identified the borrower as "The Ingros Family LLC" (with the "The" before the family name on the mortgage). *See* Complaint, ¶ 11 and Exhibit B to Complaint. In or about September of 2018, Debtor applied to Enterprise for a loan to refinance the First National Bank Mortgage. *See* Complaint, ¶ 7.

On September 14, 2018, Debtor executed a mortgage in favor of Enterprise in the amount of $3,179,000 to secure repayment of the refinance loan. *See* Complaint, ¶ 10. The Enterprise Mortgage was recorded with the Recorder of Deeds on September 19, 2018. *Id*. However, unlike the First National Bank Mortgage, the borrower on the Enterprise Mortgage was identified as "Ingros Family LLC" (without the "The" before the family name on the mortgage). *See* Complaint, ¶ 11. Conforming with the identification of the borrower in the Enterprise Mortgage, the Recorder of Deed's receipt specifically identifies the mortgagor as Ingros Family LLC (without the "The"

4

before the family name). *See* Complaint, ¶ 12. However, it is unclear whether the Enterprise Mortgage was indexed under "T" or "I" in the name index. *Id*. After the refinance transaction, the refinance proceeds from the Enterprise Mortgage were used to satisfy the First National Bank Mortgage, resulting in a payoff of $2,642,766.33. *See* Complaint, ¶ 13. Enterprise and Debtor intended for the borrower to be correctly identified in the Enterprise Mortgage and that any discrepancy in the identification without the "The" in the name of the borrower would have no impact on the validity or priority of the Enterprise Mortgage. *See* Complaint, ¶ 15.

After the execution of the Enterprise Mortgage, Enterprise discovered the existence of the First Sharbonno Judgment (which was recorded before the Enterprise Mortgage) and a second judgment obtained by Sharbonno ("Second Sharbonno Judgment") in the amount of $460,000. *See* Complaint, ¶¶ 16 – 17. The First Sharbonno Judgment is no longer at issue in this proceeding. The Second Sharbonno Judgment was recorded after the Enterprise Mortgage on November 20, 2018 and was indexed against "The Ingros Family LLC" and Jeffrey Ingros. *See* Complaint, ¶ 17.

## Analysis

Based on the foregoing, this Court must decide whether Enterprise failed to state a claim upon which relief can be granted. In accordance with Enterprise's concessions on the record as set forth above, the Court considers Counts I, II and III herein, and treats Count IV as withdrawn.

I.  **Count I – Declaratory Judgment**

Count I of the Complaint asks the Court to declare "that the Enterprise Mortgage is a valid lien on the [Property], regardless of the manner in which the borrower may have been identified in the mortgage and whether the mortgage may have been mis-indexed based on the identification of the borrower." *See* Complaint, ¶ 24.[5] As discussed in more detail, above, this case was initially

---

[5] Within Count I, the Court notes that there was a second request for a declaration as to the priority of the Enterprise Mortgage. However, Sharbonno makes only conclusory statements related to the priority issue and appears

5

filed in state court and later removed by the Debtor to this Court. Throughout the Complaint and the parties' briefs filed with this Court, the parties cite to Pennsylvania's Declaratory Judgments Act, 42 Pa. Cons. Stat. §§ 7531-41.[6]

Sharbonno argues that "interpreting [Enterprise's averments] in the Declaratory Judgment Action, as requested, cannot result in the declarations that Enterprise seeks" as "[t]he Court cannot reform the [Enterprise Mortgage]." *See Brief in Support of Ryan Sharbonno's Motion to Dismiss for Failure to State Claims for Which Relief Can be Granted*, Doc. No. 19 at 8-9 ("Sharbonno's Brief in Support"). The case law cited by Sharbonno provides that "[i]t is well settled . . . that courts are not authorized to reform instruments within the framework of a declaratory judgment action." *New London Oil Co., Inc. v. Ziegler*, 485 A.2d 1131, 1133 (Pa. Super. Ct. 1984) (citing *Baskind v. Nat'l Surety Corp.*, 101 A.2d 645 (Pa. 1954)). Specifically, the case law instructs that

> [t]o *reform* would not be declaring a right, status or other legal relation. It is only *after* reformation that rights of the parties could be declared in respect to the reformed contract. The [Pennsylvania Declaratory Judgments] Act contemplates a declaration of rights, status, or other legal relation of any person interested under an *existing instrument*, statute, or ordinance, contract, or franchise. Nowhere are the courts given the authority to *reform* an instrument in a declaratory judgment proceeding. Such a proceeding is limited to the adjudication of rights under *existing* documents or legislation as then written.

*New London Oil Co., Inc.*, 485 A.2d at 1133 (quoting *Baskind*, 101 A.2d at 646) (emphasis in original).

---

to focus on the alleged invalidity of the lien instead. It appears to the Court that Sharbonno focuses on the invalidity of the lien as that would also, if successful, resolve the priority issue. Therefore, that second request is not separately addressed with respect to Count I.

[6] Although not addressed by the parties, the Court notes that, as a procedural tool for resolving substantive issues, it appears that Pennsylvania Declaratory Judgments Act's federal counterpart, the Declaratory Judgments Act, 28 U.S.C. § 2201, applies in this removed action. *Munich Welding, Inc. v. Great Am. Ins. Co.*, 415 F. Supp. 2d 571, 574 (W.D.Pa. 2006). Nevertheless, both acts serve the same purpose by allowing a court to declare the rights of parties. *Compare* 28 U.S.C. § 2201 (allowing the court to "declare the rights and other legal relations of any interested party"), *with* 42 Pa. Cons. Stat. § 7532 (allowing the court to "declare [the] rights, status, and other legal relations" of parties). Further, there has been no specific challenge to this Court's exercise of jurisdiction, and the Court has little trouble determining that it would exercise jurisdiction to declare the rights of the parties pursuant to the applicable factors. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014). Regardless of whether applying state or federal law, the Court reaches the same conclusion on this issue.

Additionally, Sharbonno contends that even if a mortgage is recorded, it must be signed by the owner of the property or the mortgage does not create a lien. *See* Sharbonno's Brief in Support at 8. Notwithstanding the inability to reform the Enterprise Mortgage to identify the full name of the mortgagor (i.e. "The Ingros Family, LLC") for the purpose of a declaratory judgment, applicable case law exists to support the conclusion that the name on a mortgage need not identically match the name on the deed to maintain its validity.

In *Bank of Am. v. DE&S Props.*, Aleksander Gikher obtained a mortgage from Bank of America N.A. for $100,000.00, and the mortgage was recorded in the Monroe County Office for the Recording of Deeds. 16 Pa. D. & C.5th 230, 232 (Pa. Ct. Com. Pl. 2010). The mortgage listed the mortgagor's nickname – "Alex Gikher" – instead of his legal first name – "Aleksander Gikher." *Id.* After Mr. Gikher did not pay his property taxes, the property was exposed to an upset tax sale. *Id.* When there were no purchasers at the upset tax sale, the property was sold to DE&S Properties, Inc. d/b/a Classic Quality Homes at a judicial tax sale. *Id.* at 232-33. "The parties stipulated that the Monroe County Tax Claim Bureau did not give notice of the judicial sale to petitioner Bank of America N.A." *Id*. at 233. It was determined by an expert in the abstracting of land titles that while conducting a title search, three variations of Mr. Gikher's name were found, "Aleksander Gikher," "Aleksandr Gikher," and "Alex Gikher." *Id*. at 239. The court found that "[a] reasonably prudent title searcher would have checked 'Alex Gikher.' If that was done, the Landex [indexing] system would have directed the searcher to the [] mortgage which identified the Aleksander Gikher deed in the mortgage description." *Id*. Therefore, the court held that because Bank of America did not receive adequate notice of the judicial sale, its mortgage lien was not discharged from the property. *Id*. For the purpose of this case, what is noteworthy is the failure to identify the mortgagor in the exact same way as the deed was not fatal to the validity of the mortgage.

Case 20-02165-CMB    Doc 80    Filed 06/23/22    Entered 06/23/22 15:36:49    Desc Main
Document      Page 8 of 13

Along these same lines, in *Citifinancial Servs., Inc. v. Haburjak (In re Haburjak)*, Citifinancial Services, Inc. ("Citifinancial") moved for relief from the automatic stay so it could seek state remedies regarding property owned by debtor Andrew J. Haburjak, Jr. 309 B.R. 170, 172 (Bankr. W.D. Pa. 2004). Debtor acquired the property by a properly recorded deed dated January 10, 1992, which identified the debtor as "Andrew J. Haburjak, Jr." *Id.* at 173. Thereafter, on December 12, 2002, the debtor refinanced the property with Citifinancial and executed a mortgage which identified the mortgagor as "Andrew J. Haburjak" instead of "Andrew J. Haburjak, Jr." *Id*. Additionally, the mortgage was indexed under the name "Andrew J. Haburjak" instead of "Andrew J. Haburjak, Jr." *Id*.[7] Similar to the *Bank of Am.* case, the *Citifinancial* court found

> that a reasonably prudent title searcher would, when confronting the mortgage index system maintained by the Recorder of Deeds, and when faced with a title search of a name that, in particular, was known to contain the suffix "Jr.," conduct at least two name-specific searches, to wit one search of the name with such suffix appended thereto and another similar search but without such suffix appended thereto.

*Id*. at 178. Among other things, the court ultimately held that the Citifinancial mortgage encumbered the property as a valid lien held by Citifinancial. *Id*.[8] Therefore, the mortgagor's name in a mortgage need not identically match the grantee's name in a deed in order for the mortgage to be deemed valid.

---

[7]     The debtor and trustee presented several arguments, including that the mortgage does not encumber the property because the name of the owner "listed on the Deed –i.e., 'Andrew J. Haburjak, Jr.' – does not coincide with the name of the mortgagor as listed on the mortgage –i.e., 'Andrew J. Haburjak'" and that the mortgage identifies the mortgagor as, "Andrew J. Haburjak," being the debtor's father who does not own an interest in the property, instead of "Andrew J. Haburjak, Jr.," the debtor. *Id*. at 173-74.

[8]     The *Citifinancial* court also reached certain conclusions regarding constructive notice. *Id*. at 174. However, since the Citifinancial decision, the Pennsylvania legislature has enacted 21 Pa. Stat. Ann. § 358 requiring certain conditions to be met for constructive notice of a recorded document. The parties have not addressed the applicability of that statute to the current dispute.

Based on the foregoing, the Court finds that the facts alleged are sufficient to overcome Sharbonno's challenge to Count I's request for a declaratory judgment. As a result, Sharbonno's request to dismiss Count I is denied.

## II. Count II – Reformation[9]

Count II of the Complaint requests the Court to reform the Enterprise Mortgage to reflect the name of the borrower as The Ingros Family, LLC on the basis of mutual and/or unilateral mistake. *See* Complaint, ¶¶ 26-30.[10] In Pennsylvania, a mortgage may be reformed on the basis of accident, fraud or mistake. *See Kutsenkow v. Kutsenkow*, 202 A.2d 68, 68-69 (Pa. 1964). When reformation of a mortgage is sought due to mistake, the mistake may be either mutual or unilateral. *See Dudash v. Dudash*, 460 A.2d 323, 326-27 (Pa. Super. Ct. 1983). Mutual mistake occurs when there is "[a] mistake in which each party misunderstands the other's intent" or "[a] mistake that is shared and relied on by both parties to a contract." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (citing Black's Law Dictionary 1023 (8th ed. 2004)). As observed by the Pennsylvania Superior Court, "[w]e most commonly have allowed reformation of mistaken contract provisions in cases of 'scriveners' errors,' where the parties' writing mistakenly failed to record their agreed-upon intentions. . . . In such situations, the court may reform the contract document so that its language conforms to what the parties intended." *Murray v. Willistown Township*, 169 A.3d 84, 91 (Pa. Super. Ct. 2017) (citations omitted).

---

[9] Sharbonno argues that "Enterprise has asserted . . . distinct, independent, and mutually exclusive, reasons why the mortgagor and borrower [Debtor] were identified in the documents as 'Ingros Family LLC.'" *See* Sharbonno's Brief in Support at 12. However, a plaintiff is allowed to assert alternative, even inconsistent legal theories pursuant to Fed. R. Civ. P. 8(d), made applicable to adversary proceedings by Fed.R.Bankr.P. 7008.

[10] Under Pennsylvania law, courts have the authority to correct scrivener errors through reformation. *See Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765 (Pa. Super. Ct. 2009); *see also DiMaio v. Musso*, 762 A.2d 363 (Pa. Super. Ct. 2000), *appeal denied,* 785 A.2d 89 (Pa. 2001) (holding trial court erred when it failed to reform deed to correct scrivener's error listing incorrect parcel of land).

However, relief sought on the basis of unilateral mistake requires the non-mistaken party to have "knowledge of the mistake as to justify an inference of fraud or bad faith." *Regions Mortg., Inc.*, 889 A.2d at 41 (quoting *Dudash*, 460 A.2d at 327). In order to obtain relief, the party seeking reformation of a contract must allege the unilateral mistake and the intent of the parties. *See Dudash*, 460 A.2d at 327.

Sharbonno argues that Count II should be dismissed as Enterprise is unable to state a claim for the equitable remedy of reformation based on mutual or unilateral mistake.[11] While this Court agrees that Enterprise has failed to allege the facts necessary to state a claim for contract reformation on the basis of unilateral mistake, the facts necessary to sustain a claim for reformation on the basis of mutual mistake have been alleged.

Enterprise avers as follows:

> It was . . . the intention of Enterprise and The Ingros Family LLC that the borrower would be properly identified in the Enterprise Mortgage in order to constitute a valid, first lien on the Premises, and that any discrepancy in the identification of the borrower without the "The" in the name of the borrower would have no impact on the validity or priority of the Enterprise Mortgage.

*See* Complaint, ¶ 15. Therefore, while the Complaint does not allege that each party misunderstood the other's intent, it does allege that Enterprise and the Debtor incorrectly identified the Debtor in the Enterprise Mortgage by mistake as "[a]ll parties were aware that the document was to include the correct and proper name of the borrower." *See* Complaint, ¶ 28. It is apparent from the averments in the Complaint that both the Debtor and Enterprise relied on the mistaken belief that

---

[11] A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when an affirmative defense is apparent on the face of the complaint. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). Sharbonno asserts defenses related to Count II, including that "reformation is not available when the rights of innocent third parties will be affected" and "reformation is not available when the mistake is the result of the negligence of the party seeking reformation . . . ." *See* Sharbonno's Brief in Support at 11. While the cases cited by Sharbonno support that such defenses can be raised, it is not clear what elements need to be established to set forth such defenses. As a result, the Court cannot adequately determine whether the allegations in the Complaint establish those affirmative defenses such that dismissal is warranted at this stage.

10

the Debtor was properly identified in the Enterprise Mortgage as the mortgage was executed in favor of Enterprise in the amount of $3,179,000 and "[t]he refinance proceeds provided by Enterprise were used to satisfy the First National Bank Mortgage . . . ." *See* Complaint, ¶¶ 10, 13. Therefore, the Complaint sufficiently alleges an equitable reformation claim based on mutual mistake.

In the alternative, Enterprise pleads that "the mortgage should be reformed based on unilateral mistake on the part of Enterprise in identifying the borrower." *See* Complaint, ¶ 30. While Enterprise identifies the "unilateral mistake" as Enterprise's by misidentifying Debtor in the Enterprise Mortgage, it fails to allege fraud or bad faith on the part of the Debtor as required in order to prevail under the theory of unilateral mistake. Thus, because Enterprise does not plead facts sufficient to show that the Debtor knew of the mistake of omitting *The* before the Debtor's name on the Enterprise Mortgage, or even knowledge sufficient to infer fraud or bad faith, the Complaint does not sufficiently state an equitable reformation claim based on unilateral mistake.[12]

For these reasons, Count II is dismissed in part as it relates to Enterprise's claim for equitable reformation on the basis of unilateral mistake. In all other respects, Sharbonno's request to dismiss Count II is denied.

### III.     Count III – Equitable Lien

Count III of the Complaint asserts that, "[t]o the extent that any challenge is raised to the validity of the Enterprise Mortgage, Enterprise is still entitled to a lien on the Premises." *See* Complaint, ¶33. The only challenges raised by Sharbonno appear to be in the nature of defenses,

---

[12] Additionally, Sharbonno argues that a party seeking reformation of a contract must prove facts supporting such an equitable remedy by clear and convincing evidence. *See* Sharbonno's Brief in Support at 10. However, the cases cited by Sharbonno applied the clear and convincing standard to evidence provided at trial and did not deal with the sufficiency of a complaint related to a pending motion to dismiss. At the motion to dismiss stage where the Court is merely assessing the adequacy of the pleadings, nothing in the cited cases directs that dismissal is warranted at this time.

11

which will be addressed at a later date.[13] Therefore, the Court's analysis of Count III is brief for the purposes of resolving the Motion to Dismiss. "A court, exercising its equitable powers, may impose an equitable mortgage or equitable lien on a property under the proper circumstances." *Phillips v. Resolution Trust Corp.*, No. 94-5337, 1995 U.S. Dist. LEXIS 5057, at *6, 1995 WL 230993, at *2 (E.D. Pa. Apr. 19, 1995) (citing *Gladowski v. Felczak*, 31 A.2d 718, 720 (Pa. 1943); *General Casmir Pulaski Bldg. & Loan Ass'n v. Provident Trust Co.*, 12 A.2d 336, 338 (Pa. 1940)). As a preliminary matter, it is important to note that Count III of the Complaint uses the terms "equitable mortgage" and "equitable lien" interchangeably.[14] *See* Complaint, ¶¶ 31-34. While they are both similar, there are slight differences between the two.[15] An equitable mortgage may be imposed when the parties *intended* a specific parcel of property to be used as security for an obligation. *HCB Contractors v. Rouse & Assocs., Inc.*, No. 91-CV-5350, 1992 U.S. Dist. LEXIS 9916, at *28, 1992 WL 176142, at *8 (E.D. Pa. July 13, 1992). This "intent" must be pinpointed to a particular transaction at a particular time. *Phillips*, 1995 U.S. Dist. LEXIS 5057, at *7-8, 1995 WL 230993, at *2.  Meanwhile, an equitable lien may be imposed as security for the payment of a debt on the basis of unjust enrichment regardless of the parties' intent. 1995 U.S. Dist. LEXIS 5057, at *8, 1995 WL 230993, at *3.

Here, related to the imposition of an equitable mortgage, the allegation is that Enterprise and the Debtor intended for the Property to serve as collateral for the Enterprise Mortgage.

---

[13] Sharbonno maintains defenses related to Count III, including that Enterprise is unable to state a claim for the imposition of an equitable lien as "two errors [were] created by Enterprise" and this equitable remedy is "unavailable where the consequences of an error that the party seeking the equitable remedy seeks to fix is due to its own ignorance or carelessness." *See* Sharbonno's Brief in Support at 15. As discussed in Count II, above, while such affirmative defenses are permitted, it is not clear what elements need to be established to successfully set forth such defenses. As a result, the Court cannot adequately determine whether the allegations in the Complaint establish those affirmative defenses such that dismissal is warranted at this stage. *See supra* note 11.

[14] A bankruptcy court may impose an equitable mortgage or lien in particular situations. *Kedzuf v. Turetsky (In re Turetsky),* 402 B.R. 663 (Bankr. W.D. Pa. 2009).

[15] Enterprise acknowledges the distinction between equitable mortgages and equitable liens. *See Enterprise Bank's Brief in Opposition to Ryan Sharbonno's Motion to Dismiss for Failure to State Claims*, Doc. No. 23 at 17-18.

Enterprise avers that Enterprise loaned the Debtor $3,179,000 and in return the Debtor executed a mortgage on the Property in favor of Enterprise in the sum of $3,179,000. *See* Complaint, ¶¶ 9-10. These events both occurred on September 14, 2018. *Id*. Enterprise contends that it was the intention of Enterprise and the Debtor that the Enterprise Mortgage would be a valid lien on the Property. *See* Complaint, ¶ 15. Pertaining to the imposition of an equitable lien, while the Complaint does not specifically mention the term "unjust enrichment," it does indicate that the proceeds provided by Enterprise after the execution of the Enterprise Mortgage "were used to satisfy the First National Bank Mortgage, resulting in a payoff of the First National Bank Mortgage in the amount of $2,642,766.33." *See* Complaint, ¶ 13. Therefore, it appears to this Court that regardless of whether Count III is seeking an equitable mortgage or an equitable lien, Enterprise sufficiently alleged the facts necessary to sustain both an equitable mortgage claim and an equitable lien claim in order to survive a motion to dismiss. As a result, Sharbonno's request to dismiss Count III is denied.

## Conclusion

Based on the foregoing, the relief sought in the Motion to Dismiss is granted in part and denied in part. Specifically, Count II is dismissed only as to the claim for reformation pursuant to unilateral mistake. In all other respects, the Motion to Dismiss is denied. An Order will be entered consistent with this Memorandum Opinion.

Date:   June 23, 2022                                          /s/ Carlota M. Böhm
                                                      Carlota M. Böhm
                                                      Chief United States Bankruptcy Judge

**MAIL TO:**
Joseph P. Fidler, Esq.
William L. Stang, Esq.
Thomas E. Reilly, Esq.
Ryan Cooney, Esq.

FILED
6/23/22 3:23 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA